# ARMSTRONG v. WEST COAST LIFE INSURANCE COMPANY.

No. 2308.   Decided May 25, 1912   (124 Pac. 518).

1. INSURANCE—ACCIDENTAL INSURANCE—DEATH FROM ACCIDENTAL MEANS.  Under a policy covering death as a result of accidental injuries caused solely by external, violent, and accidental means, the insurer is liable if death was caused by a disease which was itself caused by an external, violent, and accidental means producing a bodily injury.  (Page 117.)

2. INSURANCE—ACTION ON POLICY—SUFFICIENCY OF EVIDENCE— DEATH BY ACCIDENTAL MEANS.  Evidence in an action on an accident policy *held* to show that the insured received injuries by external, violent, and accidental means, and died from a disease attributable to and caused by the injuries.  (Page 117.)

3. INSURANCE—AMOUNT OF RECOVERY—DEATH FROM ACCIDENTS.  An accident policy for $610 provided as an additional benefit that, if the insured when over ten years of age should die within three months from the date of and as a result of accidental injuries, the amount payable thereunder as a death claim, subject to all the terms and conditions of the policy, would be increased by fifty per cent. so as to amount to $915, and also that, if insured should die within six months from date of the

policy, the insurer would pay only one-half of the maximum sum, and if insured should die after six months, and within one year from date, the full amount would be paid. *Held*, that the provision as to additional benefits was not restricted or modified by the clause relating to death within six months and one year from the date of the policy, and, where insured, an adult, died from accidental means within six months from the date of the policy and within three months from the time of his injuries, he was entitled to recover $915. (Page 117.)

APPEAL from District Court, Second District; *Hon. J. A. Howell*, Judge.

Action by Mettie C. Armstrong, Administratrix of the Estate of Isaac Armstrong, deceased, against the West Coast Life Insurance Company.

Judgment for plaintiff, for partial relief and she appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*A. G. Horn* for appellant.

*Edwards & Ashton* for respondent.

STRAUP, J.

This is a suit based on two policies of insurance issued and delivered by the defendant, by the terms of which the plaintiff's intestate was insured for something, which to be ascertained is the question presented on this appeal. One policy was dated and issued November 1, the other November 15, 1909. The two policies are alike except as to the amount of insurance. We refer to the first. It reads:

The defendant, "in consideration of the application for this policy and of the weekly premiums to be paid on or before twelve o'clock, noon, of each Monday, hereby insures the person named as insured commencing at twelve o'clock, noon, of the day of the date of this contract and during life, and promises to pay to the executors or administrators of the insured, or at its option, to other persons named on reverse side

41 Utah—8

hereof, upon surrender of this policy and all premium receipt books, the amount of original benefits set forth herein, within twenty-four hours after acceptance at its home office, in San Francisco, California, of satisfactory proof of death of the insured during the continuance of this policy.

"If this policy is continued in force it will become entitled to the following:

### "ADDITIONAL BENEFITS
(large black type).

"1. If the insured be over ten years of age and die as the result of accidental injuries caused solely by external, violent and accidental means, producing visible and external marks upon the body, such death occurring within three months from date of said injuries, subject to all the terms and conditions of the policy, the amount payable hereunder as a death claim shall be increased by 50% of the 'original maximum sum' insured and then shall amount to $915.00."

The policy then provides for (2) "Dividend Additions;" (3) "Paid-Up Policy;" (4) "Cash Surrender Values;" (5) "Payments for Accidental Injuries" resulting in loss of both hands or feet, or one hand or one foot, or sight, provisions not here material. Underneath these, and across the face of the policy, in large black type, are the words:

### "SCHEDULE OF BENEFITS ABOVE
REFERRED TO."

Below this:

| "Name of the Insured<br><br>Isaac Armstrong.<br>[in ink] | Original  Maximum  Sum<br><br>$610  00<br>[in ink]" |
|---|---|
| Age next Birthday<br><br>35 Years.<br>[in ink] | Below this in small type:<br><br>"If the insured shall die within six calendar months from date hereof the company will pay only one-half of this sum; if death occur after six calendar months and within one year from date hereof the full amount will be paid." |
| Weekly Premium<br><br>50 Cents.<br>[in ink] | |

Then follows: "In witness whereof," etc., and signature of the defendant.

On the back of the policy is the indorsement that "this policy is issued and accepted upon the following conditions, all of which are made a part of this contract." Provisions are then made relating to a warranty of the statements made by the insured; death resulting from suicide or criminal acts; engaging in the military or naval service, or in the sale of intoxicants; payment of premiums; revival of the policy if lapsed; the persons to whom the benefits may be paid; understating the age of the insured; nonassignability of the policy; and the time in which suit may be commenced.

The other policy is in the same form and language, except under "Additional Benefits" is inserted $183, where in the first policy $915 is stated, and, under "Original Maximum Sum," $122, where in the first policy $610 is stated.

Both policies were put in evidence. The execution and delivery of them, the payment of the premiums, and the legal existence of the policies, were all admitted. The plaintiff proved that on the 9th day of February, 1910, while the insured was on a stepladder sixteen feet high cleaning a ceiling of a room of a store building, the ladder slipped, causing him to fall to the floor, his body striking and breaking a showcase, by reason of which he was bruised and injured about the face, chest, and side, and blood was caused to gush and stream from his nose and mouth. He was unable to speak for about twenty minutes, when he complained of much pain. He was taken to his home and a physician summoned. His wife testified that "he complained of pains on the inside," and that "he was helpless from the time he was hurt until the time that he died," on the 10th day of March following, about one month after the accident. The physician testified that the insured was bruised about the face, hand, and knee, and that "his chest was bruised on the side," and that he was under his care at the time he died, and that the immediate cause of death was pneumonia induced by the injuries. When asked on cross-examination, "Why would an injury cause pneumonia?" the physician answered, "It would

cause it by lowering his vitality and allowing an entrance for the pneumonia germ, making a fertile field for its development; it could cause it another way by direct injury to the lung, causing traumatic pneumonia." When asked, "What makes you think that this pneumonia resulted from an injury?" the physician answered, "Well, I know that his vitality was lowered; he was in a lowered state of health; he had never gotten back to his usual health when the pneumonia developed." And, when asked if the insured might have contracted pneumonia "if he had been in his usual and customary health," the physician answered, "That is possible." He further testified that "pneumonia developed a couple of days before the deceased died;" that he theretofore had no cold; and that "there was nothing to indicate why he should have pneumonia except the injuries." This is all the evidence relating to the injury and the cause of death. No question is raised as to notice or furnishing proofs of death, etc. The defendant offered no evidence. At the close of the evidence, and upon argument of counsel to the court, the latter observed, "Now, the court being of the opinion that the proof does not show that the death was caused solely by the accident, the company is only liable, assuming they are otherwise liable, for the sum of $610 on the policy, subject to this further condition that, if he dies, if the insured dies within six months of the issuance of the policy, that is in small type under the $610, then the company is liable for one-half, which would be $305, and on the other one the same thing, of course, except as to the amount." Upon the request of plaintiff's counsel for a submission of the case to the jury for their determination as to whether the insured's death did occur solely from the accident, the court stated, "I don't think there is any question for the jury to determine." The court thereupon directed them to return a verdict for the plaintiff in the sum of $305 on the one policy, and sixty-one dollars on the other, and denied interest "because the administratrix was not appointed until the 7th day of August." Such a verdict was rendered, upon which a judgment was entered accordingly.

The plaintiff appeals. She contends that she was entitled to a verdict for $915 on the one policy, and $183 on the other, together with interest from demand and refusal to pay May 9, 1910.

The view entertained by the court that upon the evidence the death was not solely caused by the accident is not tenable. The rule announced by the courts with respect to terms of policies, similar to those here, and, as stated **1, 2** by Mr. Justice Sanborn, in the case of *Western Commercial Travelers' Ass'n v. Smith,* 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653, is this:

"If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the *causa causans*, the accident alone."

The evidence here shows that the insured received injuries by external, violent, and accidental means, and died from a disease attributable to and caused by the injuries within three months of the date of the injuries. As to this, there is no conflict in the evidence.

But the respondent urges that, though the death was solely caused by accidental and violent means within the meaning of the policy, and though it occurred within three months of the date of the injuries, still the plaintiff **3** was entitled to recover, if at all, only one-half of $610 on the one policy, and one-half of $122 on the other, the amounts for which the court directed the verdict. This conclusion is deduced from the quoted language of subdivision "1" relating to a death claim if death results from accidental, external, and violent means, under the heading "Additional Benefits," the subject given the most prominence in the body

of the policy, and from the quoted language of the small type below the words "Original Maximum Sum, $610." From such language it is argued: That, while by the clause relating to "Additional Benefits" the defendant agreed to pay $915 if death occurred by accidental and violent means within three months from the date of the injuries, yet the payment of such amount was "subject to all the terms and conditions of the policy" which meant or included the terms and conditions stated in small type below the words "Original Maximum Sum, $610;" that, "if the insured shall die within six calendar months from date hereof (of the policy), the company will pay only one-half of this sum (one-half of $610); if death occur after six calendar months and within one year from date hereof the full amount ($610) will be paid." And, since the insured died within six months of the date of the policy, the amount agreed to be paid was only one-half of $610, though he died as the result of injuries caused solely by accidental and violent means within the meaning of the policy, and within three months from the date of the injuries. Adopting this interpretation and applying it further, then, if the insured had died as the result of injuries caused by accidental and violent means, and within three months from the date of the injuries, but after six months and within one year of the date of the policy, still there would have been no liability for additional benefits, for the condition stated in the small type is that, if death occur after six months and within one year of the date of the policy, the full amount to be paid was only $610. When was there a liability to pay additional benefits if death resulted from injuries caused by accidental and violent means? If the respondent's interpretation of the policy is correct, only in case death so resulted by such means one year after the date of the policy, and within three months from the date of the injuries. Because of the features of the policy of both accident and life insurance, and of the prominence given in the body of the policy to "Additional Benefits" relating to a death claim if death result from injuries caused by accidental and violent means, and of the language employed in that con-

nection, we think the conclusion unreasonable and not the intended effect of the policy. Such, at least, is not the ordinarily perceived sense of the language of the policy.

But let us look at this further on respondent's theory that the payment of $915, the fifty per cent increase of the "Original Maximum Sum of $610," was subject to and controlled by the conditions relating to and under which the "Original Maximum Sum" was payable. Under those conditions, according to respondent's contention, the liability was only one-half of the original maximum sum of $610, or $305, and no more, if death occur within six months of the date of the policy, though from injuries caused by accidental and violent means, and $610, and no more, if it occur within one year of the date of the policy. But under such stated conditions the company does not agree to pay the "Original Maximum Sum of $610,'" or any part thereof, if death occur one year after the date of the policy. And since the payment of additional benefits was, as is argued, subject to and controlled by the stated conditions relating to the "Original Maximum Sum," and since the company under such stated conditions did not agree to pay such sum, or any part thereof, if death occur one year after the date of the policy, then, even though death occurred from injuries caused by accidental and violent means one year after the date of the policy, there would be no liability to pay any part of either the original maximum sum or any additional benefits, for fifty per cent of nothing would be nothing. Contracts of the character in hand are susceptible of precision. But, if respondent's construction of this policy is correct, the insured, to understand it, was required to detect a recondite or abstruse meaning of language and to go through a process not much unlike a solution involving a geometrical progression or the limit of a variable quantity. And, while lucidity and perspicuity respecting the undertakings and obligations of the insurer in the particulars under consideration may not be conspicuous features of the policy, yet to construe it, as does respondent, leads, if not to an absurdity, to a conclusion hard to believe was intended.

We think a fair meaning of the policy, and as is expressed and was intended by the language employed, is that, if death occur from injuries caused by accidental, external, and violent means within three months of the date of the injuries, the liability of the insurer on the policy, and the amount payable thereunder as a death claim, was to be increased fifty per cent of the "Original Maximum Sum, $610," which is $915, and as was so computed and expressly stated by the insurer in the body of the policy relating to such additional benefits, and that such payment was not subject to nor controlled by the stated conditions relating to the original maximum sum and to a liability and the amount thereof if death occur from causes or by means other than accidental, external, and violent. The words in the clause of additional benefits, "subject to all the terms and conditions of the policy," are not words which restrict or modify the "amount payable" as a death claim if death result from injuries caused by accidental, external, and violent means, as is apparent from a reading of the clause, but are words relating to conditions and terms creating liability, affecting the validity and existence of the policy, and requiring compliance to keep it alive and to render it enforceable. But the "amount payable" as a death claim, if death result from injuries caused by accidental and violent means within the meaning of the policy, is definitely fixed and precisely expressed to be fifty per cent of the original maximum sum, or "$915." Of course the payment thereof, as all other indemnity, is subject to the terms and conditions of a valid and subsisting policy, and a compliance with them to keep it alive and to render it enforceable.

We think the plaintiff was entitled to a directed verdict on the first policy for $915, and on the second for $183, together with interest on both amounts from demand, May 9, 1910.

The judgment of the court below is therefore reversed, and the cause remanded to the district court with directions to enter a judgment in favor of the plaintiff and against the defendant on the first policy or cause of action for the sum of $915 and interest from May 9, 1910, and on the second

policy or second cause of action for $183 and interest from May 9, 1910, and taxable costs below, and taxable costs on appeal which are hereby awarded to appellant.

FRICK, C. J., and McCARTY, J., concur.