# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## AMERICAN NATIONAL INSURANCE COMPANY V. ETHEL DOZIER.

April 10, 1939.

Record No. 2060.

Present, Campbell, C. J., and Holt, Hudgins, Gregory Browning and Spratley, JJ.

The opinion states the case.

*Robert F. McMurran,* for the plaintiff in error.

*Thomas L. Woodward* and *Paul L. Everett,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Ethel Dozier instituted an action in the lower court against the American National Insurance Company claiming death and accident benefits of $2,000 as beneficiary under a policy held by her husband, Horace L. Dozier, deceased. A judgment for $2,000 was rendered in her favor.

The American National Insurance Company has appealed to this court and assigns as error the failure of the lower court to set aside the verdict of the jury as being contrary to the law and evidence and enter final judgment on behalf of the defendant.

Horace L. Dozier was employed as a welder in the Norfolk Navy Yard in Portsmouth, Virginia. He became a member of the International Brotherhood of Boilermakers, Iron Shipbuilders, Welders and Helpers of America, and took out the policy of insurance through this organization, with the American National Insurance Company.

The rules of the International Brotherhood state that it will provide or procure benefits for members in the amount of $1,000 for death from any cause whatsoever. They also provide that every insured member in good standing shall receive double that amount "if death shall ocur as the result of an accident."

The company admitted that the beneficiary, Mrs. Dozier, was entitled to recover $1,000 for death benefits but denied liability under the double indemnity clause on the alleged ground that the insured did not die as the result of an accident.

The sole question before this court is whether or not there was sufficient evidence to sustain the conclusion that Dozier died as the result of an accident.

The evidence on behalf of the plaintiff in the lower court, Mrs. Ethel Dozier, shows that Dozier had been in excellent health for a number of years. During February, 1937, he was employed as an electric welder on two destroyers, the "Tucker" and the "Downs." A poisonous gas known as "galvanize" is given off when welding machines are used on the metal in these vessels and to guard against this each machine is equipped with a suction vent or blower which is supposed to carry away the deleterious fumes, although some fumes may escape notwithstanding this safety device. There is no protection against fumes arising from workers on the opposite sides of ships. Men have been made ill at various times from inhaling these fumes, which cause violent pain, nausea, vomiting, chills and fevers.

On February 23, 1937, the day on which Dozier inhaled "galvanize" fumes, an electrician, Mr. Sharp, asked Dozier to do some welding for him, and he said he would "get it in a few minutes." He did not come to do the work and an investigation disclosed that he was too sick to complete the job. The same evening Dozier went home and was very ill. His skin had a yellow cast and he was seized with violent nausea and pain. He showed all the symptoms of one who had inhaled "galvanize" fumes. He went to work the next day but did not partake of any food except milk, and continued to be ill. On February 26th he went back to the Navy Yard to receive his pay. He remained in bed the greater part of the time from the 26th of February, but on March 8th he drove with his son back to the Navy Yard for his pay. He returned home and was confined to his bed until his death on March 19, 1937.

Dr. Richardson Joyner was called on March 12th and his examination revealed a temperature of 101, a red and congested throat and there appeared a disorder of the bronchial tubes. He also noticed that "he had a very peculiar dusky color, sort of a darkish hue, to his skin that was out of proportion to any symptoms I found." The next night he was called again and found the patient hemorrhaging, and, thereupon, made immediate arrangements for him to be placed

in the hospital. Death occurred on March 19th and the death certificate attributed the cause to bronchial pneumonia.

Dr. Louis Rawles who also attended the patient in the hospital testified that Dozier did not have the usual reaction to drugs administered in cases of pneumonia and that they could not quiet him or keep him in an oxygen tent. He said "from that standpoint it was an unusual case and quite an unusual pneumonia case."

The appellee's contention is that Horace L. Dozier died as a result of "galvanize" fumes. This view of the case was accepted by the jury and as previously stated they returned a verdict in favor of the beneficiary under the insurance policy for $2,000.

The insurance company avers that Dozier died as a direct result of contracting pneumonia through natural causes and that it could not have been brought about by the inhaling of "galvanize" fumes. They introduced witnesses to show that Dozier was working on another vessel at the time he was supposed to have inhaled the gas while working on the destroyer "Downs." They also rely on the testimony of Dozier's foreman, Mr. McGee, and the superintendent, Mr. Kneeberg, who stated that he made no complaints to them on the 23rd, 24th, 25th and 26th of February, and that he was apparently in good health. It was also shown that no complaint was made to the physician in the Norfolk Navy Yard dispensary.

The jury heard this testimony as well as that of plaintiff, and we are of opinion that there was sufficient evidence before them to support the conclusion that Horace L. Dozier died as the result of an accident. No objection is raised before this court to instructions offered and given, and as stated above, the only assignment of error is that the verdict of the jury was not supported by the evidence.

In 14 Ruling Case Law, "Insurance," section 418, page 1238, an accident as used in accident or health insurance is defined as follows: "An accident is usually defined as an event that takes place without one's foresight or expectation; an event that proceeds from an unknown cause,

or is an unusual effect of a known cause, and therefore not expected."

In the same volume, section 422 at page 1245, this is said: "An accident policy insuring against bodily injuries effected through external, violent and accidental means covers disease, if the disease was proximately caused by a bodily injury occasioned through external, violent and accidental means."

The Virginia case most nearly in point is *Newsoms* v. *Commercial Casualty Insurance Company*, 147 Va. 471, 137 S. E. 456, 458, 52 A. L. R. 363. In this case an action was had on an accident policy. The insured had been in good health up until the day of his death. About 9:30 in the morning he ate for his breakfast some cold canned beans and white meat. Shortly thereafter he was taken ill and died at 11:40 on the same morning of ptomaine poisoning or acute indigestion. The question before the court was whether or not death was the result of external, violent and accidental means, and the jury found in favor of the plaintiff beneficiary but the trial court set the verdict aside and entered judgment for the defendant. This court speaking through Judge Chichester and reversing the lower court said: "Upon the whole case we think that the question of the cause of the insured's death was one for determination by the jury and that their finding was binding upon the trial court and, of course, upon this court."

Judge Parker speaking for the court in *Zurich General Accident & Liability Insurance Company* v. *Flickinger*, 33 F. (2d) 853, 68 A. L. R. 161, adopted the principles laid down in *Newsoms* v. *Commercial Casualty Insurance Company, supra,* and held that death from drinking poisonous liquor was the result of an accident.

In *Peck* v. *Equitable Accident Association of Binghampton,* 52 Hun 255, 5 N. Y. S. 215, an action was had on an accident insurance certificate which provided that it should apply only to cases where injury was the proximate or sole cause of disability or death. The insured had his arm broken on March 24th and a few days later suffered with

severe pains in his chest and lungs. A week or ten days after this he had a return of the former pains in his chest and died on April 12th. It was held that the finding that his death was caused solely and proximately by breaking his arm was warranted by the evidence and that a claimant did not have to show the fact of the injury and its attendant circumstances by eyewitnesses but that the nature of the injury itself was direct and positive proof.

In the case of *Western Commercial Travelers' Association* v. *Smith,* 85 F. 401, 404, 29 C. C. A. 223, 40 L. R. A. 653, the court speaking through Judge Sanborn announced the rule to be as follows: "If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the *causa causans,* the accident alone." See also, *Armstrong* v. *West Coast Life Insurance Company,* 41 Utah 112, 124 P. 518.

In *Druhl* v. *Equitable Life Assurance Society,* 56 N. D. 517, 218 N. W. 220, 60 A. L. R. 962, it was held that when an accident causes a diseased condition which, together with the accident results in death, the accident alone is to be considered the cause of death within the provisions of the policy.

In the case of *Equitable Life Assurance Society of the United States* v. *Gratiot,* 45 Wyo. 1, 14 P. (2d) 438, 82 A. L. R. 1397, it was held that an automobile accident was the cause of the insured's death. It was shown that the deceased had arteriosclerosis and that the autopsy revealed a hemorrhage of the brain. The court held it a proper question for the jury to decide the proximate cause of death. See annotation page 1411.

We are of opinion, therefore, that the jury had sufficient evidence before them to reach the conclusion that the insured died as the result of an accident, and the trial court was correct in its refusal to set aside the verdict.

The judgment is affirmed.

*Affirmed.*