## MOSS v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.

No. 5506.   Decided April 29, 1936.   (56 P. [2d] 1351.)

*Willard Hanson, Paul E. Reimann,* and *E. D. Sorenson,* all of Salt Lake City, for appellant.

*H. L. Mulliner* and *L. L. Robinson,* of Salt Lake City, for respondent.

FOLLAND, Justice.

This is an action to recover accrued monthly indemnity under the health provisions of an accident and health policy of insurance. On the trial, after plaintiff introduced evidence and rested, defendant moved for a nonsuit, which was granted. Later the case was dismissed. Appellant attacks, and respondent defends, each of the five grounds on which the motion for a nonsuit was based. The controversy may be narrowed to one proposition, which if decided for respondent, ends the case.

Appellant's cause of action rests on disability and loss of time of the insured because of insanity which he alleged to be the sequela of influenza, a disease contracted during the period covered by insurance. He suffered attacks of influenza in January, April, and July of 1929. The insurer paid indemnity for loss of time on these occasions. On July 19, 1929, Cikaylo, the insured, was found praying on a street in Salt Lake City and was taken into custody by the police. The next day an insanity inquisition was had before the district court, as the result of which he was adjudged insane, and on September 7th ordered committed to the State Mental Hospital. He was taken to that institution October 24th and later transferred to the veterans' hospital at Sheridan, Wyo. Presumably he was at the latter institution at the time of trial, although this was not definitely shown. Cikaylo claim-

ed and was paid indemnity for the loss of time caused by influenza or grippe for the period commencing July 20 and ending August 5, 1929.

The parties divide on the construction to be placed on the policy of insurance. Respondent contends the policy stipulates against payment for loss of time resulting from insanity, regardless of the cause of insanity. Appellant takes the position that the exemption clause in the policy is not applicable where the insanity is the result of, or was caused by, a disease covered by the policy, and, further, that the language of the policy is ambiguous, and therefore should be construed most favorably to the insured. The policy provides as follows:

"This policy provides benefits for loss of life, limb, sight or time by accidental means, or loss of time by sickness as herein provided.

"Mutual Benefit Health and Accident Association Omaha
(Herein called Association)

"Insuring Clause George Cikaylo (Herein called the Insured) of City of Salt Lake City, State of Utah, against loss of life, limb, sight or time, resulting directly and independently or all other causes, from bodily injuries sustained through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time on account of disease contracted during the term of this Policy, respectively, subject, however, to all the provisions and limitations hereinafter contained. * * *

"The Association will pay, for one day or more, at the rate of One Hundred ($100.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this Policy, and which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time. * * *

"This policy does not cover death, disability, or other loss sustained in any part of the world except the United States and Canada, or while engaged in military or naval service, or while the Insured is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself; or received because of or while participating in aeronautics; or resulting from insanity; or disability from any disease of organs which are not common to both sexes."

It would seem clear that the policy excepts from its operation either disability resulting from insanity or loss of time resulting from insanity. The pertinent portions of these clauses, leaving out all reference to accidental injuries which are not here involved, are: "This policy provides benefits for loss * * * of time by sickness as herein provided;" also insures George Cikaylo "against loss of time on account of disease contracted during the term of this policy * * * subject to * * * (a) This policy does not cover death, disability, or other loss sustained * * * or resulting from insanity." The only loss covered under the policy which could be claimed on this record would be for loss of time, because the only losses covered are for death, limb, sight, or loss of time, and there could be in this case no claim for either loss of limb or sight or death. The last sentence, therefore, should be read as if it said: "(a) This policy does not cover loss of time resulting from insanity."

The language is plain, unequivocal, and unambiguous. The rule contended for by appellant for a construction of an ambiguous provision most strongly against the insurer and in favor of the insured has no application here. In *Bergholm* v. *Peoria Life Ins. Co.*, 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. 416, Mr. Justice Sutherland, speaking for the court, said:

"It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. *Mutual Life Ins. Co.* v. *Hurni Packing Co.*, 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; *Stipcich* v. *Metropolitan Life Ins. Co.*, 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings." See, also, *Reeves* v. *Midland Casualty Co.*, 170 Wis. 370, 174 N. W. 475, 959; *State ex rel. Commonwealth Casualty Co.* v. *Cox*, 322 Mo. 38, 14 S. W. (2d) 600; 14 R. C. L. 926.

Insanity has been variously defined. In early times an insane condition was associated with "possession of the devil," but is now regarded as a disease or defect ■ of the brain, or at least the outward manifestation of such a disease or defect. In 32 C. J. 594, the following definition is given:

" 'Insanity' is a broad, comprehensive, and generic term, of ambiguous import, for all unsound and deranged conditions of the mind. It includes every species of organic mental derangement, whatever may be its source or cause, whether the mental condition is congenital, or the result of arrested mental development, or of the act of Providence, or of the party's own imprudence, or of religious excitement, or of physical disease, or of dissipation, or of old age, or of unknown causes, or whether it is personal or hereditary. * * * According to the great current of modern medical authorities, and so generally recognized by law, insanity is a physical, and not a mental, disease of the brain."

A concise definition is that of Dr. Frederick Peterson quoted in *American National Ins. Co.* v. *Denman* (Tex. Civ. App.) 260 S. W. 226, as follows:

"Insanity is a manifestation in language or conduct of disease or defect of the brain."

In excluding from the policy any loss of time or disability resulting from insanity, the policy did not in any manner limit the word "insanity" to any particular type or kind, nor as arising from any particular cause. It did not indicate that insanity caused by or resulting from a disease contracted during the policy period was within the policy, but that insanity from congenital, accidental, or other causes was outside its operation. The language taken in its ordinary meaning permits no recovery for loss or disability because of insanity, whatever the cause of the insanity may have been. Any other construction placed on this language would require us to write into the contract something that is neither expressed nor implied; namely, that no loss of time is payable on account of insanity resulting from accidental

or congenital causes, but is payable if the insanity results from a disease contracted during the policy period. Our duty is to construe and enforce the policy as written. We may not make a new contract on different terms for the parties. Undoubtedly the amount of premium was fixed with reference to the scope of the policy. Where the insanity is the sequela of a disease contracted during the policy period and loss of time sustained because of the insanity, it is excluded from the operation of the policy by the provision (a) above quoted, the same as insanity from any other cause.

Appellant cites *Armstrong* v. *West Coast Life Ins. Co.*, 41 Utah 112, 124 P. 518, 519, but that case is clearly distinguishable. There recovery was sought under an accident policy insuring against death as a "result of accidental injuries caused solely by external, violent and accidental means." The insured suffered an accident, followed by pneumonia, from which he died. The immediate cause of death was pneumonia. The evidence without conflict showed that the insured received injuries by external, violent, and accidental means, and died from a disease attributable to, and caused by, the injuries. There was in that policy no exception such as found in the policy in question here. If the additional provision (a) were not in the contract before us, the Armstrong Case would have controlling influence on our decision.

*Anderson* v. *Great Eastern Casualty Co.*, 51 Utah 78, 168 P. 966, L. R. A. 1918B, 1194, is a case in point and sustains the conclusion we have reached. There the court gave effect to an exception in a health and accident policy of insurance. The action was based on the accident provision in the policy. The insured had sprained his ankle, and septicemia, commonly called blood poison, followed, from which he died. The policy contained this provision:

"Any loss resulting wholly or in part, directly or indirectly, from * * * blood poison or septicemia * * * shall be considered as resulting from sickness and covered only under section 5 of this policy."

Referring to the quoted section, the court said:

"In that section, the parties to the contract have for themselves determined that in case certain symptoms or conditions supervene they shall conclusively be considered and treated as diseases, regardless of what may have caused such symptoms or ailments. That is, the parties have agreed that certain symptoms or ailments which frequently have been the subject of disagreement and protracted litigation shall be treated as diseases, regardless of what may have caused them."

In that case septicemia was caused by, or resulted from, the accidental injury, but by the exception in the policy the septicemia was to be treated as an illness, not an accident, and gave to plaintiff a different amount of indemnity. Here the insanity was caused by, or resulted from, the disease, but by the exception in the policy recovery is excluded. Other cases supporting the same view are the following: *Sweeney* v. *National Relief Assur. Ass'n,* 52 Misc. 144, 101 N. Y. S. 797; *Order of United Commercial Travelers* v. *Edwards* (C. C. A.) 51 F. (2d) 187; *Bartallotte* v. *Commercial Casualty Ins. Co.* (Sup.) 163 N. Y. S. 95; *Holmes* v. *Continental Casualty Co.,* 102 Me. 287, 65 A. 385; 6 Couch, Cyc. of Insurance Law, § 1263, p. 4667.

The record discloses that the insurer paid the insured for loss of time due to influenza after the insanity supervened, but refused to pay for loss of time due to insanity. The contract precludes plaintiff from recovering for disability or loss of time due to the insanity. Judgment is affirmed. Costs to respondent.

ELIAS HANSEN, C. J., and MOFFAT, EPHRAIM HANSON, and JAMES H. WOLFE, JJ., concur.