## NORTH AMERICAN ACC. INS. CO. v. TEBBS.

### No. 1887.

Circuit Court of Appeals, Tenth Circuit.
Oct. 19, 1939.

Rehearing Denied Jan. 2, 1940.

E. D. Hurd, of Salt Lake City, Utah (J. D. Hurd, of Salt Lake City, Utah, on the brief), for appellant.

A. W. Watson, of Salt Lake City, Utah, for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On November 5, 1937, the North American Accident Insurance Company issued its policy of accident insurance to Samuel Nyal Henrie. The policy insured Henrie against certain losses resulting directly and independently of all causes from bodily injuries effected solely through accidental means, including loss of life and loss of either hand. On November 16, 1937, Henrie sustained bodily injuries through the accidental discharge of a shotgun with which he was hunting, resulting in the loss by amputation of his left hand a short distance above the wrist. On January 24, 1938, Henrie assigned the policy and his claim for indemnity thereunder to Tebbs. Tebbs brought an action in the district court of Salt Lake County, Utah, to recover indemnity for the loss of Henrie's hand and surgical, nurse, and hospital fees aggregating $3,853.15. The action was duly removed to the federal court.

The application for the policy was dated November 2, 1937, and read in part as follows:

"9. . . are you now applying for any other Accident, Health or Life Insurance, except as herein stated? Applying for $2,000 life with Occidental; $1,000 with Occ. Life."

"11. Has any application ever made by you for Accident, Health or Life Insurance been declined, . . ? No."

"18. Are the foregoing answers true and complete? Yes."

On June 12, 1937, Henrie signed an application to the Mutual Benefit Health & Accident Association[1] for an accident policy. The application was taken by J. Wallace May, a soliciting agent for the Mutual Association. On October 5, 1937, Henrie signed another application to the Mutual Association for an accident policy. Pendleton, a soliciting agent for the Mutual Association, took the second application. Henrie testified that he delivered the first application to May on the condition that it was not to be transmitted to the Mutual Association unless he went into the employ of that Association as a soliciting agent, and that he delivered the second application to Pendleton upon the condition that it was not to be transmitted to the Mutual Association unless and until he paid the premium and directed Pendleton to forward the application; and that he did not go into the employ of the Mutual Association and did not pay the premium on the second application or direct Pendleton to forward it to the Mutual Association. May and Pendleton testified that the applications were delivered to them unconditionally; that they were forwarded to the Mutual Association, and were by it declined. May testified that he notified Henrie of the declination of the first application and Pendleton testified that he notified Henrie of the declination of the second application. Henrie denied that he was advised of the declinations of such applications until after he applied for the policy in suit. His testimony as to the conditional delivery of the second application was corroborated by one DeLong, and his testimony that he was not advised of the declination of the second application was corroborated by H. C. Tebbs and C. F. Tebbs.

It was stipulated that the amount of indemnity under the policy if the plaintiff was entitled to recover aggregated $3,815.65.

At the close of the evidence the North American Company moved the court to instruct the jury to return a verdict in its favor. The motion was denied.

The court instructed the jury that irrespective of the directions and instructions given by Henrie to agents May and Pendleton at the time the applications to the Mutual Association were signed, they were in fact applications for insurance within the purview of the questions in the application for the policy in suit, and that either the answer to question 9 or the answer to question 11 in the application was false. By special interrogatories numbered 1 and 3 the court submitted to the jury

---

[1] Hereinafter referred to as the Mutual Association.

the question whether the answers to questions 9 and 11 were material to either the acceptance of the risk or the hazard assumed by the North American Company, and by special interrogatories numbered 2 and 4 the court submitted to the jury the question whether such answers were made with intent to deceive. The court also submitted to the jury the following special interrogatories:

"5. Was the insured Henrie applying for accident insurance with the Mutual Benefit Health & Accident Association on November 2, 1937, the date of his application made to the defendant?"

"6. On said date, to-wit: November 2, 1937, did the insured Henrie believe, or have reasonable ground to believe that his application to the Mutual Benefit Health & Accident Association above named had been declined?"

"7. Did the insured Henrie on the said 2nd day of November, 1937, believe, or have reasonable ground to believe that his application to the said Mutual Benefit Company bearing date October 5, 1937, had been declined?"

Each interrogatory submitted was answered in the negative.

On the special interrogatories the court entered a judgment reading in part as follows:

"Now, therefore, solely upon and in pursuance of the jury's answers to said interrogatories Nos. 1 and 3, and without regard to and expressly disregarding the jury's answer to interrogatories Nos. 2, 4, 5, 6, and 7, which are in part inconsistent and contrary to the court's instructions to the jury, the court concludes, as a matter of law, that the plaintiff is entitled to a judgment against defendant; and

"It is, upon motion of counsel for plaintiff, hereby Ordered, Adjudged and Decreed that plaintiff have and recover, and he is thereby given judgment against defendant for the sum of $3815.65, together with interest thereon at the rate of six per cent per annum from the 24th day of January, 1938, and amounting for principal and interest to date to the sum of $3987.-35, together with his costs of suit herein."

The North American Company has appealed.

■ As heretofore stated, the court instructed the jury that the applications to the Mutual Association signed by Henrie on June 12 and October 5, 1937, irrespective of Henrie's directions and instructions to agents May and Pendleton, were applications within the purview of the questions in the application for the policy in suit. We may assume, without deciding, that the instruction was correct. If they did constitute applications for accident insurance, they had been rejected on November 2, 1937, when the application for the policy in suit was made, and the answer in that application to question 9 was literally true. The court, therefore, erred in charging the jury that either the answer to question 9 or the answer to question 11 was false.

The North American Company contends that the statements made in answers to questions 9 and 11 constituted warranties, and that the insured's knowledge of the truth or falsity thereof was immaterial. It predicates this contention on the following provisions of the policy and the application:

"This policy is issued in consideration of the statements in the application, . .

"1. Do you understand that the insurance if granted, is to be based upon the following statements and that the falsity of any statement herein shall bar the right to recovery if any such statement is material to either the acceptance of the risk or the hazard assumed by the Company or made with intent to deceive? Yes."

■ If the language of the policy is reasonably open to two constructions, the one more favorable to the insured will be adopted.[2] In Sentinel Life Ins. Co. v. Blackmer, 10 Cir., 77 F.2d 347, 351, certiorari denied, 296 U.S. 602, 56 S.Ct. 119, 80 L.Ed. 427, in construing provisions of an application and policy of accident insurance substantially like the provisions of the application and policy in the instant case above quoted, we said:

"Webster's New International Dictionary defines 'false' as follows:

'3. Not according with truth or reality; not true; erroneous; as, a *false* statement.

" '4. Not genuine or real; assumed or designed to deceive; intentionally or wilfully untrue; counterfeit; artificial; hypocritical; sham; feigned; as *false* tears; *false* modesty; *false* colors; *false* jewelry; a

---

2 Kavanagh v. Maccabees, 66 Utah 307, 242 P. 403; Moss v. Mutual Benefit Health & Accident Ass'n, 89 Utah 1, 56 P.2d 1351; Sentinel Life Ins. Co. v. Blackmer, 10 Cir., 77 F.2d 347, (certiorari denied, 296 U.S. 602, 56 S.Ct. 119, 80 L.Ed. 427) and cases there cited.

*false* check or entry; *false* teeth; *false* gods;—in this sense often distinguished from *erroneous or mistaken.*'

"Thus it will be seen that 'false' is a word of double meaning.

"In Moulor v. American Life Ins. Co., 111 U.S. 335, 345, 4 S.Ct. 466, 471, 28 L. Ed. 447, the court said:

" 'In one sense, that only is true which is conformable to the actual state of things. In that sense, a statement is untrue which does not express things exactly as they are. But in another and broader sense the word "true" is often used as a synonym of honest, sincere, not fraudulent.'

"It follows that 'false' should be construed to mean intentionally or wilfully untrue."

■ We conclude that the statements constituted representations and not warranties. It was, therefore, incumbent upon the North American Company to allege and prove that the statements in answers to questions 9 and 11 were untrue and that Henrie knew or should have known them to be untrue at the time he made them. Chadwick v. Beneficial Life Ins. Co., 54 Utah 443, 181 P. 448, 451, 452. If the statements were knowingly false, proof of an actual conscious purpose to deceive was not necessary.[3]

■ Counsel for the North American Company assert that the answers to questions 9 and 11 were material, as a matter of law, and that the court erred in submitting that issue to the jury. Assuming that the two applications taken by May and Pendleton constituted applications for insurance, we agree that the answers were material as a matter of law,[4] but for reasons presently indicated we deem the submission of that issue was harmless error.

The case presented only two primary issues for the jury: (1), Did Henrie know or should he have known that the answer to question 11 was false, and (2), Were the answers to questions 9 and 11 made with intent to deceive?

■ The first issue was properly submitted to the jury by special interrogatories numbered 6 and 7 and answered by the jury in the negative. Henrie denied he was ever notified that such applications had been declined by the Mutual Association. In this he was corroborated as to the second application by the testimony of C. F. Tebbs and H. C. Tebbs. If, in fact, Henrie instructed May not to forward the first application unless Henrie went into the employ of the Mutual Association, the period of time which elapsed between the making of that application and the application for the policy in suit would not necessarily cause Henrie to believe that the application to the Mutual Association had been rejected. He may well have believed that the application had never been submitted. It follows that there was substantial evidence to support the answers made by the jury to special interrogatories numbered 6 and 7.

The second issue was submitted to the jury by special interrogatories numbered 2 and 4 and answered in the negative. Its answers to those interrogatories were also supported by substantial evidence. Irrespective of whether the applications constituted applications within the purview of the questions in the application for the policy in suit, if Henrie signed them under the circumstances testified to by him, he may well have honestly regarded them as not constituting applications, and as we have already indicated, there was substantial evidence to support the finding that he did not know they had been submitted and declined.

It follows that the judgment is supported by the evidence and material findings of the jury.

■ The trial court reached a correct result. The fact that he gave erroneous reasons therefor is immaterial. In the review of judicial proceedings if a decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.[5]

The judgment is affirmed.

---

[3] Chadwick v. Beneficial Life Ins. Co., 54 Utah 443, 181 P. 448, 452; Columbian National Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740, 741, 742; Stewart v. American Life Ins. Co., 10 Cir., 89 F.2d 743, 747, 748; Shaner v. West Coast Life Ins. Co., 10 Cir., 73 F.2d 681, 684; United States v. Depew, 10 Cir., 100 F.2d 725, 728; Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202.

[4] Columbian National Life Ins. Co. v. Rodgers, supra; Shaner v. West Coast Life Ins. Co., supra, 73 F.2d at page 684.

[5] Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Ohio Casualty Ins. Co. v. Marr, 10 Cir., 98 F.2d 973, 976, certiorari denied 305 U. S. 652, 59 S.Ct. 245, 83 L.Ed. 422.