STATE OF MISSOURI at the relation of the MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and NICK T. CAVE, Judges of the Kansas City Court of Appeals, and ORVA C. WHEELER, Administratrix of the Estate of RICHARD A. WHEELER.—No. 38040.—166 S. W. (2d) 484.

Division One, November 10, 1942.

Rehearing Denied, December 1, 1942.

*Ralph L. Alexander* for relator.

424

*Jerome M. Joffee, Luman Spry* and *Henry L. Bear* for respondent Orva C. Wheeler, Administratrix of Estate of Richard A. Wheeler.

DALTON, C.—Original proceeding by certiorari to quash for alleged conflict the opinion of the Kansas City Court of Appeals in the case of Orva C. Wheeler, Administratrix of the Estate of Richard A. Wheeler, deceased, v. Mutual Benefit Health and Accident Association, a corporation, 157 S. W. (2d) 554.

In that case "plaintiff sued as administratrix to recover benefits alleged to have accrued on account of total disability occasioned by disease, and under the terms of a policy issued by defendant to Richard A. Wheeler, her deceased husband." The particular terms of the policy will be set out later. The petition alleged that while the policy was in full force and effect, and on May 1, 1937, Richard A. Wheeler became insane and continued so until his death on February 10, 1940. "All other allegations necessary to recovery," were made, provided the policy afforded "coverage for total disability and loss of time occasioned by the disease of insanity." (157 S. W. (2d) 554, 555.)

"Defendant filed a demurrer to the petition on the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was overruled, defendant declined to plead further, and on motion of plaintiff to assess damages the court heard evidence and rendered judgment for plaintiff."

Respondents stated the issue before them on appeal as follows: "The only question on appeal is the propriety of the ruling on the demurrer to the petition. . . . It is the position of appellant that the policy does not afford coverage on account of a restrictive clause hereafter shown." (157 S. W. (2d) 554, 555.) Respondents then described the policy and its terms as follows: "At the top of the first page of the policy, in prominent type, is the recital that 'this policy provides benefits for loss of life, limb, sight or time, by accidental means, or loss of time by sickness as herein provided.' The first para-

graph of the policy recites that: 'Mutual Benefit Health and Accident Association Omaha. does hereby insure Richard A. Wheeler (Herein called the Insured) of City of Glasgow, State of Missouri, against loss of life, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained during any term of this Policy, through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time beginning while this Policy is in force and resulting from disease contracted during any term of this Policy, respectively, subject, however, to all the provisions and limitations hereinafter contained.'

"On one side of the words 'Does Hereby Insure' appears in prominent words and figures 'Monthly Benefits $60.00, Maximum Monthly Benefits $120.00.' And on the other side, 'Death Benefit $1,500, Maximum Death Benefit $3,000.' Following the first paragraph above quoted are various sub-divisions of the policy designated alphabetically as Parts A to O, inclusive. Parts A to J, inclusive, provide mainly for accident indemnities, and parts K to O, inclusive, provide specially for illness indemnities. Part K in its entirety reads as follows:

" 'Part K. Confining Illness Benefits for Life.

" 'The Association will pay, for one day or more at the rate of Thirty ($30.00) Dollars per month for the first fifteen days and at the rate of Sixty ($60.00) Dollars per month thereafter for disability resulting from disease, the cause of which originates more than thirty days after the effective date of this policy, and which confines the Insured continuously within doors and required regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time.'

"Following the fifteen alphabetical parts are seventeen paragraphs numbered numerically. None of them pertain to any question that arises on this appeal. Following the seventeen paragraphs are 'Additional Provisions' lettered (a) to (f) inclusive. The first additional provision, lettered (a), is in these words: '(a) This policy does not cover death, disability, or other loss sustained in any part of the world except the United States and Canada, or while engaged in military or naval service in time of war, or any act of war, or while the Insured is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself; or received because of or while participating in aeronautics, except as provided in Part H; or while suffering from insanity or mental infirmity; or while the Insured is suffering from syphilis or venereal disease. Disability resulting from tuberculosis or heart trouble shall be covered only if the disease originates after the policy has been in continuous force for the six (6) preceding months.' '' (157 S. W. (2d) l. c. 555-556.)

No one here complains of this statement by respondents and it is unnecessary to refer to other provisions of the policy.

Respondents held: "If the words in Paragraph (a) of 'Additional Provisions' were to be given full effect they would control Part K to the extent of completely excluding any payment for disability resulting from the disease of insanity. Whether or not such effect should be given to Paragraph (a) will determine the correctness or error of the court's ruling on the demurrer to the petition. The conclusion which we have reached is that Part K of the policy constitutes a definite promise to pay a specified sum upon the happening of a certain contingency resulting from any disease, and subject only to the conditions expressed in said part; and that the subsequent provision described as paragraph (a) under the title 'Additional Provisions', which seeks to eliminate liability for loss of time occasioned by the disease of insanity, is repugnant to the provisions of Part K, and creates an irreconcilable conflict therewith. Under such circumstances the subsequent restricting clause cannot be given the force claimed for it by appellant, but will be ignored to the end that the promise of indemnity in Part K may be given effect. Entertaining the above views, the finding must be that the trial court properly ruled the demurrer."

Respondents further said: "It is entirely reasonable and just to hold that by Part K of the policy the company agreed to pay a definite amount for loss of time resulting from total disability occasioned by any disease. It was undoubtedly so understood by the insured when he purchased this policy, and it may fairly be said that the minds of the parties never met upon an agreement that the disease of insanity was an excepted risk. Part K is subject to certain conditions expressed therein. Did the insurer desire the insured to understand that still other conditions were intended to apply, and, if so, why were they not included in this part? If the insurer intended to rely on any other condition or limitation of Part K, such as that now claimed, it should have been plainly stated in this part instead of being concealed among a multitude of other so-called additional provisions at the end of the policy. The judgment of the court should be affirmed." (157 S. W. (2d) 554, 557-558.)

Respondents in comparing the terms of this policy with a policy mentioned in another case, further referred to this policy as containing conflicting provisions, "one of which provides for a definite payment upon the contingency of disability by disease, and another and subsequent provision providing that the policy does not cover disability occasioned by the disease of insanity." (157 S. W. (2d) 554, 557.)

Relator here contends that respondents' opinion should be quashed because "it is directly in conflict with controlling decisions of this court in that (a) it fails to enforce the contract as written by the parties, (b) it gives the contract a meaning not embraced within its

terms, in that it enlarges an unambiguous contract of insurance under the guise of construction, and (c) it fails to construe said contract as a whole." Relator then says that the contract "in clear and unambiguous language excludes liability for disability resulting from the disease of insanity." Relator further contends that respondents failed to give effect to a plain, unambiguous and valid provision of "the policy exempting from coverage disability resulting from the disease of insanity;" and that in so refusing to give effect to a clear and unambiguous, valid and binding provision, the respondents have failed to follow controlling decisions of this court. Relator, for conflict, relies particularly upon the following cases: Wendorff v. Mo. State Life Ins. Co., 318 Mo. 363, 1 S. W. (2d) 99; State ex rel. Mutual Benefit Health and Accident Association v. Trimble et al., 334 Mo. 920, 68 S. W. (2d) 685; State ex rel. Mutual Life Ins. Co. v. Shain et al., 344 Mo. 276, 126 S. W. (2d) 181; State ex rel. Mutual Benefit Health and Accident Association v. Shain et al., 338 Mo. 340, 89 S. W. (2d) 661; Scales v. National Life and Accident Co. (Mo. Sup.), 212 S. W. 8.

██ Relator concedes that the court, in the cases cited by it, supra, did not construe insurance policies with like provisions to the policy here under consideration, and there is no contention that the opinion of respondents conflicts with controlling decisions of this court on identical facts. Relator does, however, contend that respondents in deciding the case before them did not apply the properly applicable principles of law to the insurance contract under consideration. The particular rule of law which relator insists is applicable to the contract considered by respondents is that unequivocal language in an insurance contract must be given its plain meaning and that such a contract should be construed as a whole. No other ground of conflict is urged.

In Wendorff v. Missouri State Life Ins. Co., supra, this court said: "In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614 et seq., 267 S. W. 379, 381, 383. However, as said in 14 R. C. L., sec. 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists.' " (1 S. W. (2d) 99, 101.)

In the case of State ex rel. Mutual Benefit Health and Accident Association v. Trimble, supra, this court said: "If, therefore, no ambiguity or conflict existed under the terms of the policy, then a court had nothing to do but enforce the terms of the contract. Such has been the consistent holding of this court." (68 S. W. (2d) 685, 688.)

In the case of State ex rel. New York Life Ins. Co. v. Trimble, 306 Mo. 1. c. 309, 267 S. W. 876, 880, this court in banc said: "The plain language of this policy and slip is without ambiguity, and there is no room for construction. In construing it contrary to that meaning, the Court of Appeals brought its decision into conflict with decisions of this court. Unequivocal language is to be given its plain meaning, though found in an insurance contract."

Have the respondents patently failed to enforce an unambiguous contract as written? To determine that question this court must of course determine for itself whether the contract in question is unambiguous. We do so in order to determine whether respondents' opinion conflicts with decisions of this court. The case of State ex rel. Ocean Accident and Guaranty Corporation, Limited, v. Hostetter et al., 341 Mo. 488, 108 S. W. (2d) 17, 19, certiorari to the (St. Louis) Court of Appeals, involved the construction of an insurance policy and this court said: "It was within the province of the Court of Appeals to determine the question of ambiguity vel non. The court did so, and found the contract in question to be ambiguous and accordingly construed it. The only rule of law which the relator claims the opinion violates is the rule that unambiguous contracts are not open to judicial construction. . . . The question before us is to determine whether there is substantial reason for doubt and uncertainty in respect of the meaning of the instrument."

The case of State ex rel. Metropolitan Life Ins. Co. v. Allen, 337 Mo. 525, 85 S. W. (2d) 469, 470, certiorari to the Springfield Court of Appeals, also, involved the construction of an insurance policy and this court said: "No decision of this court has been cited, and we have found none, which construes an insurance policy with like or similar provisions to the one here in controversy, so it cannot be said that the opinion of the Court of Appeals conflicts with controlling decisions of this court on a like or similar state of facts. Our only province on certiorari being to determine questions of conflict, we have no authority to construe the policy in controversy for the purpose of determining whether the opinion of the Court of Appeals is right or wrong, but we do have a right to determine whether or not the language of the policy is plain and unambiguous for the purpose of deciding whether or not the Court of Appeals' opinion which construes the language of the policy violates controlling decisions of this court holding that unambiguous language in an insurance policy is not open to construction, but must be given its plain meaning and be enforced as written." The court then asked this question: "Is the language of the policy in controversy plain and unambiguous, or is it ambiguous, and for that reason open to construction?" We ask the same question here. Does this policy in plain and unambiguous language exclude from coverage loss of time *occasioned by* and *resulting from* the disease of insanity? Is there

substantial reason for doubt and uncertainty respecting the meaning of the policy?

The insuring clause provided that the company "does hereby insure Richard A. Wheeler . . . against loss of time . . . resulting from disease . . . subject, however, to all the provisions and limitations hereinafter contained." Under the head of "Illness Indemnities," Part K, entitled "Confining Illness Benefits for Life," it is expressly stated that "the association will pay" the amounts therein stated "for disability resulting from disease" and certain restrictions and limitations are made, to wit, that such loss of time must result "from disease, the cause of which originates more than 30 days after the effective date of this policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time." No other limitations are stated. Finally, under "Additional Provisions" (a) it is said: "This policy does not cover death, disability, or other loss *sustained* . . . *while* suffering from insanity or mental infirmity." (Italics ours.) The policy does not in express terms exclude coverage of disability or loss of time *resulting from or occasioned by the disease* of insanity. Respondents in effect held that the construction of subdivision (a) of Additional Provisions, as now contended for by the relator, was repugnant to and irreconcilably in conflict with the Part K of the policy, and that it could "not be given the force claimed for it by appellant."

What do the words "sustained . . . while" mean when used as they are used in the policy? Do they include a meaning equal to the words, "sustained because of?" If the clause, "or while suffering from insanity or mental infirmity," totally excludes recovery for disability or loss of time *resulting from* or *caused by* the *disease* of insanity, why does the preceding clause read, "or *received because of* or while participating in aeronautics, except as provided in Part H.?" (Italics ours.) According to relator's position the italicized words "received because of" would be wholly unnecessary.

We have noted that the policy in this subsequent restricting clause does not use the words "caused by," "resulting from," or "occasioned by" the *disease* of insanity, or other words of similar import. In effect, relator would read subdivision (a) of the additional provisions of the policy somewhat as follows: This policy does not cover disability or other loss *sustained because* of the disease of insanity, or *occasioned by* or *resulting from* such disease of insanity, "while suffering from insanity or mental infirmity." Would a policyholder so understand the terms actually used in the policy?

All forms of insanity and mental infirmity do not necessarily result in total disability and total loss of time, or require the insured to be continuously within doors, or require regular visits therein by legally qualified physicians, and therefore, would not necessarily give any

right of recovery for loss of time from disease under the policy terms. In view of such fact, may it not reasonably be assumed from the policy terms that the insurer believed that "insanity or mental infirmity" increased the hazard from accident and disease, and by the provision under consideration undertook to protect itself by excluding from coverage disability or other loss *sustained* from such causes, while the insured was suffering from such insanity or mental infirmity. In other words, did the limiting provision under (a) of "Additional Provisions" by the use of the words "while suffering from insanity or mental infirmity" merely exclude disability or other loss *sustained* from diseases other than insanity itself *but happening or being sustained while* the condition of insanity existed? Are not the terms of this policy reasonably open to such interpretation as well as one which would exclude loss or disability *resulting from* insanity? We think that the terms used under the head of (a) of additional provisions, and particularly the use of the words "sustained" and "while," leave the policy open to different interpretations, one of which is that the "disability or other loss" referred to under additional provisions was intended to exclude disability or other loss *sustained from causes other than the disease of insanity itself,* but while insanity existed.

 It is not our duty in this cause, nor is it our purpose, to construe the policy and determine its meaning. State ex rel. Metropolitan Life Ins. Co. v. Allen, supra, 85 S. W. (2d) 469. This court has never construed similar provisions with reference to the single question before the Court of Appeals, to wit, whether a policy containing such provisions affords coverage for total disability and total loss of time occasioned by the disease of insanity. Respondents held that it afforded such coverage.

Having reached the conclusion that the limiting provision under (a) of additional provisions (to the effect that the policy did not cover disability or other loss sustained while suffering from insanity or mental infirmity) is ambiguous and open to different constructions, it follows that the policy was subject to construction by respondents and it was for them to determine its meaning. Relator concedes that respondents "held that the language of the insurance contract was ambiguous" and that they have determined its meaning. We hold that respondents' ruling to the effect that "the subsequent restricting clause cannot be given the force claimed for it by appellant," and that the disease of insanity was not an expected risk, is not in conflict with any prior decision of this court.

 Relator has called our attention to Grabove v. Mutual Benefit Health and Accident Association, 241 Ala. 88, 1 So. (2d) 297; and Moss v. Mutual Benefit Health and Accident Association, 89 Utah, 1, 56 Pac. (2d) 1351. We assume that these cases from other jurisdictions are cited, not on the theory that they tend to show any conflict between the opinion of respondents and controlling decisions of this

court or that they tend to show respondents' opinion is wrong, but upon the theory that they might aid us in the determination of the preliminary question for our decision, to wit, whether the policy, including the particular provision in question, is in fact plain and unambiguous. Of course the question of conflict, which is the sole issue before us in this type of case, may be determined only by reference to controlling decisions of this court. State ex rel. Mulcahy v. Hostetter et al., 346 Mo. 65, 139 S. W. (2d) 939.

In the Grabove case the Supreme Court of Alabama considered a policy apparently having the same terms as the one here, and upon a claim for loss of time resulting from a form of insanity or mental infirmity known as dementia praecox. The proof submitted by the claimant admitted that the insured "suffered disability from insanity or mental infirmity" during the period covered by the claim. The court held as follows: "Without question the 'disease' disclosed by the certificate of the physician, furnished as proof of disability from disease, disclosed a disease not within the coverage of the policy." Recovery was denied. For the reasons hereinbefore stated, we do not agree that the provision is plain and unambiguous.

In the Moss case the policy used the words: "This policy does not cover death, disability, or other loss sustained . . . or resulting from insanity" (56 Pac. (2d) 1351, 1352), and the court held the language plain, unequivocal, and unambiguous, excluding disability resulting from insanity. The policy provision, however, was materially different from the one here.

Other cases cited by relator merely support the general proposition that unambiguous insurance contracts, excepting certain classes and kinds of injuries and diseases, are valid and will be enforced as written. It is unnecessary to review these cases.

Our writ of certiorari was improvidently issued and should be quashed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by Dalton, C., is adopted as the opinion of the courts. All the judges concur except *Hays, J.,* absent.