Thelma KISLING, Plaintiff-Respondent,

v.

**MFA MUTUAL INSURANCE COMPANY,
a corporation, Defendant-Appellant.**

No. 8462.

Springfield Court of Appeals.

Missouri.

Jan. 17, 1966.

Motion for Rehearing or to Transfer Denied
Jan. 31, 1966.

Application to Transfer Denied
March 14, 1966.

Wangelin & Friedewald, Poplar Bluff, for defendant-appellant.

Bloodworth & Bloodworth, Poplar Bluff, for plaintiff-respondent.

STONE, Presiding Judge.

In this jury-tried case, plaintiff Thelma Kisling obtained a verdict and judgment for $8,000 under the uninsured motorist coverage afforded by an automobile insurance policy (hereinafter referred to as the policy) issued by defendant MFA Mutual Insurance Company to plaintiff. Defendant appeals.

About 2:30 P.M. on June 7, 1963, plaintiff was driving her insured 1960 Ford automobile at a speed of about thirty miles per hour in a northerly direction on the east (her right-hand) side of the center line of the two-lane, twenty-foot concrete roadway on U.S. Highway 67 near Poplar Bluff, Missouri. The weather was clear and the roadway was dry. As Albert Mangrum, subsequently identified as an uninsured motorist, approached from the north, southbound on Highway 67, plaintiff observed that he "was weaving but . . . . was still in his lane of traffic"; but, when the two vehicles were only a few feet apart, Mangrum "jerked over" the center line and, as plaintiff "whipped" her automobile to her right, the left front portion of Mangrum's southbound Chevrolet collided with the left front portion of plaintiff's northbound Ford.

Another motorist, Cora Brent, northbound in her Rambler automobile, was following plaintiff at a distance which plaintiff declined to estimate upon trial but, in a deposition, had approximated at "about a car's length." Whatever the precise intervening distance may have been, within "a second or two or three" after the southbound Mangrum Chevrolet collided with the front end of plaintiff's Ford, the northbound Brent Rambler ran into the rear end of it.

By the time Trooper Link of the Missouri State Highway Patrol reached the scene

of accident "shortly after it happened," Mangrum had departed in his Chevrolet, the damage to which was confined to a "bent" left front fender. Link immediately went in search of Mangrum who, when located at a store more than a mile distant, "was intoxicated." Returning to the scene of accident, Link found all of the debris in the northbound lane on the east side of the center line of the highway, and both plaintiff's Ford and the Brent Rambler on the east shoulder headed north, with skid marks twenty feet in length leading to the Ford and skid marks sixty feet in length leading to the Rambler. Link estimated the damage to the front end and the rear end of plaintiff's Ford at $150 and the damage to the front end of the Brent Rambler at $200.

Twelve days after the accident, to wit, on June 19, 1963, and before her attorneys knew that Mangrum was uninsured, plaintiff instituted in the Circuit Court of Butler County a damage suit for personal injuries styled Thelma Kisling, plaintiff vs. Albert Mangrum and Cora Brent, defendants (hereinafter referred to as the damage suit). In due time, an answer was filed on behalf of defendant Brent by attorneys employed by her liability insurance carrier, and answer and counterclaim were filed on behalf of defendant Mangrum by an attorney of his choice, who informed plaintiff's attorneys that Mangrum was uninsured. Thereupon, by letter dated July 8, 1963, plaintiff's attorneys advised MFA that defendant Mangrum had filed a counterclaim in the damage suit, enclosed a copy thereof, requested that MFA (under the liability coverage afforded by the policy) defend against Mangrum's counterclaim, notified MFA that Mangrum was an uninsured motorist, and pointed out that the policy afforded uninsured motorist coverage which "would apply" to Mangrum. Shortly thereafter, Poplar Bluff attorneys employed by MFA filed in the damage suit a reply to the counterclaim of defendant Mangrum. "On several occasions" plaintiff's attorneys inquired of the MFA at-torneys "about the possibility of settling" plaintiff's claim under the uninsured motorist coverage afforded by the policy, and the latter made what plaintiff's attorneys regarded as "a nominal offer," the amount of which was not fixed in the record more definitely than that it was less than $1,200.

After the damage suit had been pending for several months, one of plaintiff's attorneys informed the MFA attorneys "that I was going to settle by way of a covenant not to sue with the insurance carrier of Cora Brent" and then proceed directly against MFA under uninsured motorist coverage. On May 15, 1964, plaintiff did settle with defendant Brent, received $1,800 in cash from her liability insurance carrier, and executed a formal covenant not to sue her. Thereafter, the damage suit was dismissed without prejudice as to defendant Brent on June 1, 1964, and as to defendant Mangrum on June 23, 1964; and, on the latter date, defendant Mangrum dismissed his counterclaim in the damage suit without prejudice.

In the meantime, to wit, on May 27, 1964, plaintiff had instituted this action against MFA under the uninsured motorist coverage afforded by Part V of the policy, whereby MFA contracted to "pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured . . . provided, that determination as to whether the insured . . . is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured . . . and [MFA] or, if they fail to agree, by arbitration." In its answer, MFA pleaded that, by virtue of the aforesaid settlement of plaintiff's claim against Cora Brent without the prior written consent of MFA, she (plaintiff) was precluded from recovery in the instant suit by the "Exclusion" in Paragraph 4(b) of Part V of the policy (hereinafter referred to as the *consent exclusion*), which provides that the uninsured motorist cov-

erage "does not apply . . . to bodily injury to an insured with respect to which such insured . . . shall, without the written consent of [MFA], make any settlement with, or prosecute to judgment any action against any person or organization who may be legally liable therefor." And, on this appeal, MFA's sole point is that the trial court erred in refusing to direct a verdict for MFA, because "plaintiff, having executed a covenant not to sue the insured motorist [defendant Brent in the damage suit] without the written consent of [MFA], was excluded from the benefit of uninsured motorist insurance coverage" in the policy. Under this point, counsel argue (a) that plaintiff's execution of a covenant not to sue Cora Brent constituted a "settlement" with her (which plaintiff does not, and could not well, deny) and (b) that the language of the consent exclusion is clear and unambiguous and the trial court's refusal to direct a verdict for MFA "had the effect of rewriting the contract of insurance."

On the other hand, plaintiff undertakes to escape from the consent exclusion and to support the trial court's ruling on three grounds, to wit, (1) that the consent exclusion was applicable only as to any settlement with *uninsured motorist Mangrum,* (2) that the consent exclusion "is void because it is against public policy and seeks to oust jurisdiction of the courts," and (3) that, "by refusing to negotiate a settlement [of plaintiff's claim under uninsured motorist coverage] or defend Mangrum in the original [damage] suit," MFA "waived" the consent exclusion and "is estopped" from relying thereon. We treat of these seriatim.

■ *Was the consent exclusion applicable only as to any settlement with uninsured motorist Mangrum?* We recognize the general principle, upon which instant plaintiff relies, that, insofar as the language of an insurance policy may be ambiguous, i. e., fairly and reasonably "susceptible of interpretation in opposite ways" [State ex rel. Northwestern Mut. Life Ins.

Co. v. Bland, 354 Mo. 391, 402, 189 S.W.2d 542, 549(23), 161 A.L.R. 423; J. E. Blank, Inc. v. Lennox Land Co., 351 Mo. 932, 957, 174 S.W.2d 862, 868], that interpretation most favorable to the insured must be adopted. See cases collected in 16 West's Missouri Digest, Insurance, ■ subd. b. But this principle does not authorize courts, under the guise of interpretation or construction, to alter or rewrite a policy [Forir v. Toman, Mo., 202 S.W.2d 32, 34 (4); Ward v. Gregory, Mo.App., 305 S. W.2d 499, 503–504; Gage v. Connecticut General Life Ins. Co., Mo.App., 273 S.W.2d 761, 763(3), 47 A.L.R.2d 1234] or to change its meaning by a perversion of language or by conjuring up an ambiguity. Aetna Life Ins. Co. of Hartford, Conn. v. Durwood, Mo., 278 S.W.2d 782, 786(3); Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 435, 222 S.W.2d 76, 78(1); Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 370, 1 S.W.2d 99, 102, 57 A.L.R. 615. And, where there is no ambiguity and thus no room for interpretation or construction, the unequivocal language of the policy must be given its plain meaning and the terms of the contract must be enforced. State ex rel. Mutual Ben. Health & Acc. Ass'n. v. Shain, 350 Mo. 422, 427, 166 S.W.2d 484, 487(1); State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 627, 127 S.W.2d 675, 676(2); State ex rel. Mutual Ben. Health & Acc. Ass'n v. Trimble, 344 Mo. 920, 925, 68 S. W.2d 685, 687(1).

■ The plain and positive language of the consent exclusion makes the uninsured motorist coverage inapplicable to bodily injury with respect to which the insured shall, without the prior written consent of MFA "make any settlement with . . . *any person or organization who may be legally liable therefor."* (All emphasis herein is ours.) Other courts have found the language of the consent exclusion to be clear and unambiguous [Oren v. General Acc. Fire & Life Assur. Corp., Fla.App., 175 So.2d 581, 582 (1965); Travelers Indemnity Co. v. Kowalski, 233 Cal.App.2d

607, 43 Cal.Rptr. 843, 845–846 (1965)], and so do we. Plaintiff's principal instruction directed a verdict for her if the jury believed (1) that "Mangrum drove on the wrong side of the road," (2) that such conduct was negligent, and (3) that, "as a direct result of such negligence, plaintiff sustained damages for which she has not been fully compensated by Cora Brent." And, in his closing argument to the jury, plaintiff's counsel frankly stated that, although Mangrum "started the whole thing by coming over that center line," there was "no question but what Cora Brent was negligent"—"of course she was at fault"— "they are both liable . . . and that is why I sued them both together" in the damage suit, and "she [defendant Brent] was negligent and her insurance company paid $1,800 in settlement of their part of the case." Plaintiff's contention ·that the consent exclusion was applicable only as to any settlement with uninsured motorist Mangrum must be rejected.

■ *Is the consent exclusion "void because it is against public policy and seeks to oust jurisdiction of the courts?"* By its terms, the consent exclusion makes uninsured motorist coverage inapplicable in either of two situations, i. e., where, without the written consent of MFA, the insured shall (1) "make any settlement with" (hereinafter referred to as the *settlement prohibi-*

tion) *or* (2) "prosecute to judgment any action against" (hereinafter referred to as the *judgment prohibition*) "any person or organization who may be legally liable" for the insured's injury. We have no doubt but that the *judgment prohibition* is invalid and unenforceable in this jurisdiction. That was our conclusion in State ex rel. State Farm Mutual Auto. Ins. Co. v. Craig, Mo. App., 364 S.W.2d 343, 95 A.L.R.2d 1321, where, after pointing out that the *arbitration provision* in the policy under review in that case (and there is a similar arbitration provision in the instant policy) did not prevent institution of suit by the insured against the uninsured motorist [V.A.M.S. § 435.010],[1] our opinion continued: "We think further that the *'consent' exclusion as a bar to suit* must fall along with the arbitration clause. The exclusion would reasonably be applicable in situations where arbitration is required [and valid];[2] but, where this is not the case, it would be against public policy to permit *a prohibition against resort to the courts for remedy* without the consent of the person ultimately liable." 364 S.W.2d at 346.[3]

However, MFA's defense of the case at bar is predicated upon the *settlement prohibition*, not the *judgment prohibition*. As evidenced by the emphasized portions thereof, the above-quoted statement from Craig, supra, concerning the consent exclusion was

1. V.A.M.S. § 435.010 follows the holdings under the common law that "the parties to a dispute may not oust the jurisdiction of the courts by an arbitration agreement." 5 Am.Jur.2d, Arbitration and Award, § 36, p. 547.

2. By January 1965 fourteen states had, by legislative action, made uninsured motorist coverage compulsory [Aksen, Arbitration Under the Uninsured Motorist Endorsement, 504 Ins. Law Journal 17, note 4], and twenty states by legislative action, and two states by judicial opinion, had "departed from the common law viewpoint of hostility toward contracts to arbitrate future controversies." Aksen, supra, at 20–21.

3. Accord: Dominici v. State Farm Mutual Auto. Ins. Co., 143 Mont. 406, 390 P.2d

806, 809 (1964); Fairgrave and Forney, Uninsured Motorist Coverage, 31 Ins. Counsel Journal 665, 669 (Oct. 1964). So, in jurisdictions where contracts to arbitrate future controversies are valid, the *judgment prohibition* usually is enforceable [e. g., Oren v. General Acc. Fire & Life Assur. Corp., Fla.App., 175 So.2d 581 (1965); Travelers Indemnity Co. v. Kowalski, 233 Cal.App.2d 607, 43 Cal.Rptr. 843 (1965); Kirouac v. Healey, 104 N.H. 157, 181 A.2d 634, 637–638 (1962)] and, in jurisdictions where such contracts to arbitrate are invalid, the *judgment prohibition* usually is unenforceable [e. g., State ex rel. State Farm Mutual Auto. Ins. Co. v. Craig, Mo. App., 364 S.W.2d 343, 345–346, 95 A.L.R. 2d 1321 (1963); Dominici, supra, 390 P.2d at 809 (1964)]. See Cotton States

carefully limited to validity of the *judgment prohibition* [364 S.W.2d at 346], and in the last paragraph of Craig, supra, we emphatically emphasized that "we express no opinion and intend no holding except as applied to the specific situation before us." 364 S.W.2d at 349. Instant plaintiff has cited, and our exhaustive research has disclosed, no reported case in this or any other jurisdiction in which the insurer's defense has rested upon the *settlement prohibition* or in which the validity of that prohibition has been discussed.

This brings us to the observation that the *settlement prohibition* is not necessarily invalid simply because the *judgment prohibition* is invalid. Whether *both* of these prohibitions (disjunctively stated in the consent exclusion) must fall because of the invalidity of the *judgment prohibition* depends upon the divisibility or separability of the two prohibitions. With respect to contracts which contain a forbidden or invalid provision, our Supreme Court at an early date declared "the general rule to be, that if the good be mixed with the bad, it shall nevertheless stand, provided a separation can be made. The exceptions are, where a statute, by its express terms, declares the whole instrument or contract void on account of some provision which is unlawful; or where there is some all-pervading vice, such as fraud, or some unlawful act which is condemned by public policy or the common law, and avoids all parts of the transaction because all are alike infected." Koontz v. Hannibal Savings and Ins. Co., 42 Mo. 126, 129(1). And it is said that the "essential test" in the determination of divisibility " 'can be nothing

else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever if any promise or set of promises were struck out.' " Swinney v. Continental Bldg. Co., 340 Mo. 611, 626–627, 102 S.W.2d 111, 120; Lopp v. Peerless Serum Co., Mo., 382 S.W.2d 620, 624; 6 Williston on Contracts, 3rd Ed., § 863, p. 275.

Certainly the entire consent exclusion is not invalid as within the exceptions delineated in Koontz, supra; and, under Williston's "essential test" adopted in Swinney and Lopp, supra, we think the conclusion inescapable that the two prohibitions in the consent exclusion are divisible or separable. For, if plaintiff insured was willing to take the policy with *both* prohibitions written into it, it surely could not be said that "there would have been no bargain whatever" [Swinney, supra, 340 Mo. at 626, 102 S.W.2d at 120] if *one* of those prohibitions had been stricken out.[4] Relieved of the *judgment prohibition,* plaintiff "receives everything for which [she] bargained and gives less in return." 6A Corbin on Contracts, § 1522, 1. c. 761. We have no doubt but that the two prohibitions in the consent exclusion are divisible or separable. Peltz v. Eichele, 62 Mo. 171, 178(3); Schibi v. Miller, Mo.App., 268 S.W. 434; Beagles v. Robertson, 135 Mo.App. 306, 320–321, 115 S.W. 1042, 1047(2); McCullough v. Clinch-Mitchell Const. Co., C.A.Mo., 71 F.2d 17, 21–22(2–6), certiorari denied 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678.

In their curt two-paragraph argument of this point (i. e., that the consent exclusion is "void because it is against public policy and seeks to oust jurisdiction of the

---

Mutual Ins. Co. v. Torrance, 110 Ga. App. 4, 137 S.E.2d 551 (1964), affirmed 220 Ga. 639, 140 S.E.2d 840 (1965), in which the *judgment prohibition* was enforced in a case arising prior to enactment of Ga.Code Sec. 56–407.1(f) forbidding policy provisions requiring arbitration.

4. As for insurers, suffice it to say that, in the 1963 standard form of automobile liability policy, the *judgment prohibition* (i. e., the words "or prosecute to judgment any action against") was deleted from the consent exclusion, leaving only the *settlement prohibition.* Risjord and Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix 203.

courts"), plaintiff's counsel treat of the consent exclusion as if the *settlement prohibition* and the *judgment prohibition* were indivisible, without recognizing that the exclusion contains two prohibitions stated in the disjunctive and without discussing the divisibility vel non of those prohibitions. The sole ground advanced in support of the contention that the consent exclusion (thus considered in its entirety) "is against public policy" is that it "seeks to oust jurisdiction of the courts." Under this point counsel quote V.A.M.S. § 435.010 (providing that an agreement to arbitrate shall not preclude suit) and cite Craig, supra (in which we struck down the *arbitration provision* and the *judgment prohibition*), Hill v. Seaboard Fire and Marine Ins. Co., Mo.App., 374 S.W.2d 606 (in which the unenforceability of the *arbitration provision* was confirmed but the validity vel non of the *settlement prohibition* or the *judgment prohibition* was not involved), and Security Printing Co. v. Connecticut Fire Ins. Co. of Hartford, Conn., 209 Mo.App. 422, 240 S.W. 263 (in which the validity and effect of an *appraisal requirement* as a condition precedent to suit was considered). None of the cited cases discuss or deal with the *settlement prohibition* or even suggest that it should be stricken down as against public policy. The *judgment prohibition* does tend to oust the jurisdiction of the courts (as we recognized in Craig, supra), but it is just as clear that the *settlement prohibition* does not and that instant plaintiff's contention to the contrary must be rejected.

The ever-increasing toll of life and limb taken on our highways by uninsured motorists, impecunious derelicts drifting on the sea of economic irresponsibility, long ago focused attention on the need for some plan or coverage which would afford a measure of financial protection to innocent victims. Efforts to meet that need first found expression in financial and safety responsibility laws and, in more recent years, have resulted in so-called fund plans such as those established in North Dakota, New Jersey and Maryland, and in the develop-

ment of uninsured motorist coverage either as a mandatory endorsement to all automobile insurance policies issued in some states (e. g., New Hampshire, Virginia and California) or simply as a permissive coverage available under automobile insurance policies issued in other states (e. g., Missouri). Ward, The Uninsured Motorist, etc., 9 Buffalo L.Rev. 283 (1960); Murphy and Netherton, Public Responsibility and the Uninsured Motorist, 47 Georgetown L.J. 700 (1959).

■ From a public standpoint, it is particularly desirable and important in states such as Missouri, where uninsured motorist coverage presently is made available on a permissive basis for a modest premium, that the risk assumed under such coverage, and thus the cost thereof, should not be increased *unreasonably* and *unnecessarily*. The *settlement prohibition* in the consent exclusion looks toward that end. See Cotton States Mutual Ins. Co. v. Torrance, 110 Ga.App. 4, 137 S.E.2d 551, 553(6, 7), affirmed 220 Ga. 639, 140 S.E.2d 840 (1965). No consideration of public policy has been advanced, and we know of none, which in our opinion should or does preclude the parties to an insurance policy from so contracting.

■ We hasten to add the caveat that the foregoing should not be misinterpreted as an expression of opinion that the *settlement prohibition* accords to an insurer the untrammeled, uninhibited and unlimited right to reject or ignore an insured's request for written consent to a proposed settlement with a "person or organization who may be legally liable" for bodily injury to the insured. On the contrary, we think that the propriety of the insurer's action in response to any such request should be, when appropriately and properly put in issue, subject to judicial scrutiny and measurement under the rule of reason, i. e., subject to determination as to whether the insurer's conduct with respect to any such request is, under all of the facts and circumstances of that particular situation, ar-

bitrary or unreasonable. Cf. Levy v. American Automobile Ins. Co., 31 Ill.App.2d 157, 175 N.E.2d 607, 611(5).

However, the record before us neither presents nor permits any such inquiry and determination, for the simple but indisputable reason that instant plaintiff made no request for the written consent of MFA to the making of the $1,800 settlement with defendant Brent. As we have noted, one of plaintiff's attorneys did advise the MFA attorneys "that I was going to settle by way of a covenant not to sue with the insurance carrier of Cora Brent" and then proceed against MFA. But the record is clear that MFA did not participate in settlement negotiations with representatives of defendant Brent and that, prior to consummation of the $1,800 settlement, MFA was not even apprised of the proposed settlement sum and had no information concerning the matter other than that conveyed by the above-quoted statement of plaintiff's attorney, which was nothing more than a blunt declaration of what he "was going" to do.

■ *Is MFA precluded by waiver or estoppel from relying on the settlement prohibition?* Plaintiff argues that MFA is so precluded because (so plaintiff says) MFA refused (1) to defend uninsured motorist Mangrum in the damage suit and (2) to negotiate a settlement of plaintiff's claim under the uninsured motorist coverage afforded by the policy. As for the alleged refusal to defend Mangrum in the damage suit, MFA had *no duty or obligation under the policy* to defend the uninsured motorist, and no such duty or obligation was imposed or suggested by our holding in Craig, supra (cited by plaintiff under this point), where, as a matter of simple justice, we *permitted the insurer on its motion* to intervene and defend on behalf of a *defaulting* uninsured motorist. 364 S.W.2d at 346–349. Furthermore, the record in the case at bar affirmatively shows that Mangrum was defended in the damage suit by an attorney of his own choice, and there is no showing that he (Mangrum) ever requested MFA to defend him. With respect to the damage suit, the only demand upon MFA was *plaintiff's* demand (under the liability coverage afforded by the policy) for a defense against Mangrum's counterclaim, and the policy obligation to furnish that defense admittedly was honored and discharged by MFA.

■ As for the alleged refusal of MFA "to negotiate a settlement" of plaintiff's claim under uninsured motorist coverage, it is true that MFA refused to pay voluntarily a settlement sum acceptable to plaintiff and her attorneys. But disappointed or provoked as plaintiff's attorneys may have been by the amount of the settlement offer, summarily dismissed by them from mind and memory as "a nominal offer" because it was less than $1,200, the established fact remains that MFA did make an offer to settle plaintiff's claim under uninsured motorist coverage. It is not unusual or uncommon for parties to entertain widely divergent views concerning the settlement value of claims; and, although instant plaintiff and MFA may have been so far apart in their positions that it would have been futile for them to have engaged in further settlement discussions at the time and although this might have permitted plaintiff to have proceeded immediately with suit on the uninsured motorist coverage afforded by the policy (as was held in Hill, supra, 374 S.W.2d at 610–611, upon which plaintiff here relies), we do not perceive, and plaintiff's brief does not demonstrate, how or why such disagreement as to the settlement value of plaintiff's claim reasonably might be said to have estopped MFA from relying upon the *settlement prohibition* in the consent exclusion or to have constituted a waiver thereof.

■ ■ In the absence of inhibition by statute or public policy, the parties to an insurance policy are free to make their own contract and to include therein such limita-

tions and restrictions upon the insurer's liability as the contracting parties are willing to accept and adopt. Mid-Continent Stores, Inc. v. Central Sur. & Ins. Corp., Mo.App., 377 S.W.2d 567, 568(1); Hall v. Missouri Ins. Co., Mo.App., 208 S.W.2d 830, 832(4); Stedem v. Jewish Memorial Hospital Ass'n. of Kansas City, 239 Mo.App. 38, 187 S.W.2d 469, 471(5); National Garment Co. v. New York, C. & St. L. R. Co., C.A.Mo., 173 F.2d 32, 37(13); Smith v. Idaho Hospital Service, Inc., Idaho, 406 P.2d 696, 699 (1965); 29 Am.Jur., Insurance, § 227, p. 614. And where, as here, the language of a limitation or restriction is not ambiguous and does not offend against public policy, it must be accorded its plain meaning and the policy must be enforced as written. State ex rel. Prudential Ins. Co. of America v. Shain, supra, 344 Mo. at 627, 127 S.W.2d at 676–677(2); Wendorff, supra, 318 Mo. at 370, 1 S.W.2d at 101–102; Simpson v. American Automobile Ins. Co., Mo.App., 327 S.W.2d 519, 526(3); Graham v. Gardner, Mo.App., 233 S.W.2d 797, 800(1). For, to do otherwise would be to make a new contract for the parties [Barmeier v. Oregon Physicians' Service, 194 Or. 659, 243 P.2d 1053, 1058(7)] in contravention of the long-recognized and oft-invoked rule that "[c]ourts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties . . . ." Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 661, 46 S.W.2d 523, 526(5), 80 A.L.R. 950; State Mut. Life Assur. Co. of Worchester, Mass. v. Dischinger, Mo., 263 S.W.2d 394, 402(6); Lachterman v. Mutual Ben. Health & Acc. Ass'n., Mo. App., 60 S.W.2d 646, 648(3).

Uninsured motorist coverage is pregnant with potentially perplexing problems, both procedural and substantive, particularly so in jurisdictions where, as in Missouri, it has not been a subject of special legislative attention and action. Since the courts must resolve each such problem as and when it is presented for determination on the facts and circumstances of a given case, we repeat here our cautionary statements in the closing paragraph of Craig, supra, 364 S.W.2d at 349, to wit, that "[w]hat we have said and held is of course applicable only to this case" and "we express no opinion and intend no holding except as applied to the specific situation before us." On the particular state of facts fully developed and firmly established by the record before us, we are impelled to the conclusion that, as a matter of law, plaintiff may not recover and that the trial court erred in overruling defendant's motion for a directed verdict at the close of all the evidence and in overruling defendant's after-trial motion to set aside the jury verdict and the judgment entered thereon and to enter judgment for defendant in accordance with said motion for a directed verdict. V.A.M.R. Rule 72.02.

The judgment for plaintiff is reversed.

RUARK and HOGAN, JJ., concur.