EFFIE H. GLOVER and LESTER H. GLOVER, Administrators of the Estate of FRED S. GLOVER, Deceased, Appellants, v. KANSAS CITY LIFE INSURANCE COMPANY, Respondent.

Kansas City Court of Appeals. January 26, 1920.

1. **LIFE INSURANCE: Lapsed Policy; Premium Note.** Where a policy of life insurance contains a promise that on failure to pay any premium note when due the policy becomes null and void without any action or notice by the company, no action may be maintained on the policy after there has been a failure to pay a premium note which has fallen due.

2. ———: Concurrent Loan Agreement. Under the peculiar facts and circumstances, *held* there is no proof that the premium note given

in payment of the policy in suit was secured by collateral deposited with another note, although the note recited that it was to secure any other indebtedness which the insured then owed, or might owe, the defendant.

3. ———: Premium Note: Waiver of Payment. A statement in a letter that the company will not enforce payment except from the proceeds of the policy is not a waiver of the payment of the premium but means that the company will look for payment of the note out of the cash surrender value of the policy or from other sources than the insured personally.

4. ———: Failure to Demand Payment. A failure to demand payment of a premium note when it falls due is unnecessary where there is an agreement that the company will not look to the insured personally for the payment of the note and where there is a provision in the policy that it should become void on failure to pay a premium note when due, without any action or notice by the company.

Appeal from Jackson Circuit Court.—*Hon. Thos. B. Buckner,* Judge.

AFFIRMED.

*Joseph S. Rust* and *Dickinson & Hillman* for appellant.

*Reed & Harvey* for respondent.

BLAND, J.—This is an action on a life insurance policy issued by the defendant on the life of Fred B. Glover. The insured died on April 20, 1916, defendant refused to pay the policy, and plaintiffs, who are the beneficiaries in the policy, brought this suit. The trial court sustained a demurrer to the evidence and plaintiffs have appealed.

The policy was for the sum of $5,000 and was issued on March 14, 1912. The first premium was paid on April 30, 1912, and the policy provided that a premium should be due on each succeeding 30th of April. The second premium was paid on April 30, 1913; the third was due April 30, 1914, but deceased failed to pay the same when due. On June 5, 1914, defendant wrote the insured that

the company's record showed that the policy had lapsed and urged the insured to make application for reinstatement, enclosing a form upon which insured could make such application, and stating that if the insured desired the company would be pleased to accept his note for the amount of the premium, $262.55, and stating further "if you are unable to pay the note when due, the company will not enforce payment except from the proceeds of the policy." The application for reinstatement was signed and returned to the company with insured's note for $262.55, due September 1, 1914. This note was never paid by insured. The policy of insurance was never in the possession of the insured for the reason that it was kept by the defendant as security for indebtedness owing to it by the insured.

At the time the policy was taken out the insured had with the defendant another policy in the sum of $5,000, which was issued on March 10, 1911. On March 14, 1912, being the same day the policy in suit was issued, and prior thereto, defendant loaned the insured $4500 and took a note containing a loan agreement signed by the insured and his wife for said sum. This note was secured by the policy issued in 1911 and several notes owned by the insured and secured by first deeds of trust on real estate worth $10,000, which were deposited with the defendant as collateral for said loan. The note or loan agreement recited that it was secured by said first deeds of trust on said real estate and that it was given "to secure the payment of this note and all other indebtedness which we now owe said company, or may owe it at any time, before the payment of this note." This $4500 note was not paid until after insured's death when insured's widow, Effie H. Glover, who is one of the administrators of his estate, entered into an agreement in her own right with the defendant wherein the defendant paid the policy of 1911 by deducting the $4500 note therefrom and then paying to her the balance due on the policy, turning over to the widow the note of $4500 and the various notes secured by deeds

of trust that had been left with defendant as security for said note of $4500. Nothing was said in the written settlement about the policy sued on.

The policy in suit provided that "upon the failure to pay a premium on or before the date when due, or *upon failure to pay any premium note when due,* this policy will become null and void without any action or notice by the company, and all right shall be forfeited to the company except as hereinafter provided." (Italics ours.) The policy later on provided a table of cash surrender or loan values and extended insurance, and recited that "this table will apply if this policy be free from indebtedness, but any existing indebtedness may be paid in cash and the table will then apply; or if not so paid, the loan and cash values will be reduced by the indebtedness and the amount of paid-up or the term of extended insurance will be reduced in the ratio of the indebtedness to the reserve on this policy. Any existing dividend or dividends or paid-up additions to the credit of this policy will increase these guarantees." The table provided that after the expiration of three years the cash surrender or loan value should be $247.95, and the extended insurance, in case further premium was not paid, was two years and eleven months. If the third premium was paid and the policy was not canceled, the extended insurance was sufficient to carry the policy beyond the time of deceased's death.

It will be noted that the policy provided that it should be null and void "upon the failure to pay any premium note when due." This provision of the policy was a valid one. [Leeper v. Ins. Co., 93 Mo. App. 602; Gruen v. Ins. Co., 169 Mo. App. 161.] The policy, therefore, was not in force after September 1, 1914, unless some other provision of the policy kept it in force after that day or the defendant waived the payment of the note.

However, plaintiffs base their right to recover on the alleged modification of the policy made by the company

when it wrote the insured on June 5, 1914, asking him to reinstate the policy. Plaintiffs in their brief state their contention in these words:

"The plaintiffs rested their case squarely on the policy and modifications thereof made by F. W. Fleming, as secretary of the company. The modifications were made by the fact that a loan of $4500 had been made concurrently with the issuance of the policy on collateral of the value of $5000 evidenced by a note which provided that the collateral should also be security for any other indebtedness thereafter accruing. . . . The plaintiffs rely upon the fact that F. W. Fleming, secretary of the company, wrote the assured the letter above referred to as "Exhibit 7," telling him that the company would not enforce payment except from the proceeds of the policy and this letter together with the facts and circumstances concerning the issuance of the policy, concurrently with the loan of $4500 secured by the collateral attached, which was all of the property belonging to the assured, and from the further fact that the company never demanded payment of the note and never cancelled the policy and never notified the assured that said policy would be cancelled and never required cash payment of the note, the refusal to pay the policy is wholly without justification."

One trouble with plaintiffs' contention is that there is no evidence that the policy in suit was issued concurrently with the loan of $4500, or had anything to do with such loan. While it is true that the record shows that they were issued on the same day, there is no evidence that they had any connection with each other. We find nothing in the record about the matter except a statement by defendant's counsel that he understood that at the time the policy sued on was issued Glover, the insured, was indebted to the defendant and the policy was assigned to defendant by him as collateral security for this indebtedness, and for this reason the policy has at all times been in the possession of the defendant. There is nothing in the record to

show that the indebtedness referred to by counsel for defendant was the $4500 note given defendant by Glover and his wife. The inference is that it was some other indebtedness, for the reason that Col. Fleming, secretary of the company, who was placed on the stand by plaintiffs, stated that the insurance was negotiated before the $4500 loan.

We understand plaintiffs to insist that as the note for $4500 states that the securities therein named were to secure the payment not only of that note but "all other indebtedness" which the insured owed the company or might at any time before the payment of the note owe it, that defendant could not treat the policy as having lapsed for the nonpayment of the premium note, for the reason that there were securities provided in said note, or loan agreement, to which defendant must have resorted for the payment of the premium note, and until it had exhausted said securities it could not treat the policy as having lapsed for nonpayment of said note, and second, that by reason of said letter, written by the defendant to the insured on June 5, 1914, the defendant waived payment of said premium note.

The policy sued on purported to contain the entire agreement between the insured and the company in reference to the insurance and the payment of the premiums thereon. Whether the provision in the note or loan agreement to the effect that the securities mentioned therein were to secure any indebtedness that insured might owe the defendant at any time had any reference to indebtedness such as the note given for the third premium due on this policy, to our minds, at least, is doubtful under the circumstances. Reading the loan agreement and the policy together, there is, to say the least, an ambiguity existing on this point. In fact, plaintiffs tried their case upon the theory that such ambiguity did exist, for the reason that they asked their witness, Col. Fleming, the secretary of the company, if the loan agreement provided that the securities therein

mentioned should be collateral for the premium note, and he answered that it was not so understood because "this is a transaction by itself" (that is, the third premium note) "and is given to keep in force a life insurance policy, and is naturally subject to the terms of the policy." The construction that the parties placed upon the loan agreement and policy shows that the parties did not contemplate that the loan agreement cover this kind of indebtedness, that is, this premium note. If it was contemplated that the loan agreement was to cover a premium note given on this policy of insurance, it was also contemplated that it would cover the premium indebtedness itself for which the note was given, and if it covered the premium itself, there would have been no lapse of the insurance on April 30, 1914, and the insured would not have executed the reinstatement application and thus have joined with defendant in treating the policy as lapsed on April 30, 1914, without first demanding that defendant exhaust its collateral securities. As already stated, the defendant yielded up all this collateral security to the insured's widow when it paid the policy issued in 1911 without any mention of the policy sued on or the premium note given for the third annual premium due thereon.

We think that it is apparent there was no waiver of the payment of the premium note when the company through its secretary, Col. Fleming, wrote the insured on June 5, 1914, the letter mentioned supra. While it is true he stated in the letter that if the insured was unable to pay the note when due "the company will not enforce payment except from the proceeds of the policy," this did not mean that the company agreed that it would wait until the insured died before collecting the note given for the premium and then take it out of the proceeds of the policy. Insurance companies exist through the collection of premiums. There would be no way for them to stay in business if they postponed the collection of premiums until after their in-

sured die and then deduct the premiums from the proceeds of the policies. Such a construction of the letter would show that the company was violating section 6934, Revised Statutes 1909, providing against discrimination between its insured, which discrimination, section 6935, Revised Statutes, provides, shall be a cause for revocation of the license of defendant to do business in this State. No doubt, the letter means that if insured would give his note for the third premium this would constitute the payment of said premium, and as the policy provides that it should have a cash surrender or loan value at the expiration of three years, that the company would look to the amount coming to the insured under this provision for its premium if the insured failed to pay the note, and the policy by reason thereof should become null and void, as provided in the policy, for the failure of insured to pay the note when due. If the insured died before the note became due, the defendant could have collected the note from the proceeds of the policy. Of course, after deducting the amount of the premium note from the cash surrender value at the end of the three years there would be no extended insurance, for the reason that the premium was for $262.55 while the cash surrender or loan value was for $247.95, the latter sum not being quite enough to meet the premium, but as the policy contemplated that dividends would be earned upon it, this difference was, no doubt, taken care of by such dividends, although the amount of such dividends was not shown. The letter amounted to nothing more than an agreement not to hold plaintiff liable for the note beyond the value of the policy and that defendant would not look beyond the policy for payment of the note.

Plaintiffs make must of the fact that no demand for the payment of the note was made of the insured at the time it became due. This is fully explained by defendant's letter, in which it told the insured that if he did not pay the note when it became due that the company would look to the policy alone for payment. While there

was no notice given by the company to the insured that the policy was canceled by reason of the non-payment of the note, we do not think that any such notice was necessary, for the reason that the policy provided that it should become *ipso facto* null and void if the note was not paid "without any action or notice by the company." The evidence shows that it was not treated as a valid policy by the defendant after the note was not paid, and the policy was filed away in defendant's "lapsed policies" file.

From what we have said there was no error in the exclusion of testimony. The judgment is affirmed. All concur.