STATE OF MISSOURI, at the Relation of the NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Corporation, Petitioner, v. EWING C. BLAND, NICK T. CAVE and SAMUEL A. DEW, JUDGES OF THE KANSAS CITY COURT OF APPEALS.—No. 39361.—189 S. W. (2d) 542.

Court en Banc, September 4, 1945.

Rehearing Denied, October 1, 1945.

*E. R. Morrison, James E. Nugent* and *Maurice E. Benson* for petitioner; *G. M. Swanstrom, Wm. E. Jones* and *Morrison, Nugent, Berger & Johns* of counsel.

*Lester McRoberts* and *White & Hall* for respondents.

DOUGLAS, J.—This is a suit on a life insurance policy. The policy was issued in 1919. In 1923 insured obtained a policy loan from the insurance company which was later increased from time to time and never repaid. Interest that was not paid annually when due was added to the principal. In 1938 the policy lapsed for nonpayment of the premium. Thereupon, in accordance with the provisions of the policy, the entire indebtedness was deducted from the cash surrender value and the policy changed to extended term insurance. The extended term insurance expired May 31, 1938. Insured died August 17, 1939. It is conceded that had the company charged only simple interest on the loan instead of compound interest the balance of the policy reserve, after deducting the indebtedness, at the time the policy lapsed would have been sufficient to carry the extended insurance beyond the date of death.

The question for decision is whether the policy loan provision permits the company to charge compound interest under the collateral agreement governing the loan.

Trial was by the court, a jury being waived. Judgment was for the insurance company. Plaintiffs appealed to the Kansas City Court of Appeals which reversed and remanded with directions to enter judgment for plaintiffs. Edwards et al. v. Northwestern Mut. Life Ins. Co., (Mo. App.), 183 S. W. (2d) 359.

On January 2, 1945 this court granted a writ of certiorari to review the decision of the Kansas City Court of Appeals for conflict with our decisions under the Amendment of 1884 to Article VI of the Constitution of 1875. On March 30 the new Constitution of 1945 went into effect having been adopted by the people on February 27. Section 10 of Article V of the 1945 Constitution provides in part: "The supreme court may finally determine all causes coming to it from any court of appeals, whether by certification, transfer or certiorari, the same as on original appeal."

Plaintiffs argue since the judgment in their favor in the court of appeals became final with the overruling of the motion for rehearing, their rights under it then became fixed and may not be affected by a subsequent change in the law. But the judgment was not then final in sense that it was not subject to review and reversal. Review by certiorari was still available. Timely notice was given and timely application for certiorari was made. See State ex rel. Berkshire v. Ellison, 287 Mo. 654, 230 S. W. 970. Our issuance of the writ to the Kansas City Court of Appeals operated to suspend any right to enforce the judgment until we should complete our review of the case. The general rule is: "The writ of certiorari takes the record out of the custody of the inferior tribunal, leaves nothing there to be prosecuted or enforced by execution, and operates as a stay of execution . . ." 14, C. J. S., "Certiorari", sec. 108. See also State ex rel. Adler v. Ossing, 336 Mo. 386, 79 S. W. (2d) 255; State ex rel. Berkshire v. Ellison, supra.

The new constitutional power granted this court to determine a case which comes to it by certiorari in the same manner as one which comes on original appeal, that is to determine it on the merits, is one having to do with procedure. It is the rule in this State that a law dealing with procedure applies to all actions falling within its terms whether commenced before or after its enactment unless the contrary intention is expressed. Wentz v. Price Candy Co., 352 Mo. 1, 175 S. W. (2d) 852. While the ruling in the Wentz case applied to a statute, the same ruling is pertinent, in our opinion, to a constitutional provision dealing with procedure, although constitutional provisions ordinarily operate prospectively only. We so indicated in The State v. Jackson, 105 Mo. 196, 15 S. W. 333, and such was held in Cassard v. Tracy, 52 La. Ann. 835, 27 So. 368 and Moye v. National Surety Co., 208 Cal. 279, 280 P. 982. Accordingly we shall exercise the new power granted us by the Constitution of 1945 and consider this case

on the merits instead of merely reviewing the decision of the Kansas City Court of Appeals for conflict.

We turn now to the merits of the case. The policy provision relating to a loan is as follows:

"At any time while this Policy is in force except as extended term insurance, and without the consent or participation of any beneficiary not irrevocably designated, the Company will on receipt of this Policy properly assigned advance on the sole security hereof any amount up to the limit secured by its cash surrender value. The sum advanced shall bear interest at a rate of not to exceed six per cent per annum and may be repaid at any time while this Policy is in force except as extended term insurance. Failure to pay either the sum advanced or interest thereon shall not avoid this Policy unless the total indebtedness to the Company on account hereof shall equal or exceed the then cash surrender value, nor until thirty-one days after notice shall have been mailed to the last known address of the Insured or any Assignee."

The assignment agreement executed by insured upon making the loan with the company provides:

"In Consideration of the loan to the undersigned by The Northwestern Mutual Life Insurance Company, of the sum of ———— Dollars, payable at its Home Office in the City of Milwaukee, Wisconsin, with interest at the rate of six (6) per cent, per annum, payable annually, the undersigned, as security for the payment of said loan with interest, hereby assign, transfer and set over to the said Company at Milwaukee, Wisconsin, Policy No. ———— issued by the said Company on the life of ———— including all present and future additions thereto.

"In case of the non-payment of any interest on said loan as above provided, such interest shall be added to and become a part of the principal of said loan and shall bear interest at the rate aforesaid. Whenever the total indebtedness to the said Company on account of said loan and accrued interest shall equal or exceed the cash surrender value of said policy, and thirty-one days after notice shall have been mailed to the last known address of the insured, and of any assignee of said policy, the said policy shall, without other action on the part of the said Company, become void and be deemed surrendered in consideration of the cancellation of said loan."

Plaintiffs assert the provision of the policy that "the sum advanced shall bear interest at a rate not to exceed six per cent per annum" is a clear and unambiguous statement requiring the payment of simple interest only, and since there is no specific provision as to when interest is to be paid it would become due only at the same time as the principal. With this premise, plaintiffs contend that the company can not compel the insured to pay compound interest as that exceeds the condition of the policy under which insured is entitled to make a loan, and there is no consideration for such added obligation.

It is clearly established that where provisions of a policy and an assignment agreement conflict the policy controls. But when we examine the policy for the matters covered by the assignment agreement about the time of interest payments and the action to be taken for failure to make them, we find the policy silent. The policy does provide that failure to pay the sum advanced or interest shall not avoid the policy unless the total indebtedness shall equal or exceed the then cash surrender value, but that provision is a restriction on the company to prevent cancellation of the policy until the condition set forth shall occur,—until the cash surrender value is exhausted. The time when such condition occurs can not be said to be the maturity of the loan, in the sense that term is used in a promissory note, because there is no promise by insured to repay the loan then or at any other time. The same is true of the time when the policy lapsed for non-payment of premium. Repayment of the loan is merely permissive. The loan ''*may* be repaid at *any* time while this policy is in force except as extended term insurance.''

We must recognize the essential differences which exist between the policy loan and an ordinary commercial loan. In doing so there is no need to enter the discussion about whether a policy loan is in fact a loan or an advance of funds which insurer must ultimately pay if the policy remains in force.

The policy loan imposes no personal liability on insured. Cases in this State holding to the contrary based their ruling on loan agreements wherein there was an express promise to repay the loan at a stated maturity. Equitable Life Assurance Society v. DeLisle, 194 Mo. App. 42, 182 S. W. 1026; Gillen v. New York Life Ins. Co., 178 Mo. App. 89, 161 S. W. 667. With no personal liability there is not the ordinary relationship of debtor and creditor. There is a statement in Smith v. Mutual Benefit Life Ins. Co., 173 Mo. 329, 72 S. W. 935 that an insured who obtains a policy loan is in the same legal position as if he had borrowed money from the bank. However that statement was not intended to describe the status of the parties but was made arguendo discussing what nature of indebtedness the non-forfeiture statute permitted to be deducted from the net value of the policy before applying it to the payment of temporary insurance. That case should not be understood to hold that a policy loan ipso facto creates the relationship of debtor and creditor. That is to be determined from the terms of the loan.

The usual commercial loan imposes a personal liability to repay the loan at a stated maturity. If default is made suit may be brought, judgment obtained and execution levied. In a policy loan such as the one we are considering, the principal and interest are to be satisfied only out of the reserve of the policy unless the privilege of repayment is exercised. A policy loan must necessarily be fitted to the conditions and requirements of the insurance business of which it is a part and

must be considered in that connection. A policy loan is not an independent transaction like one evidenced by a negotiable promissory note but is a part of and dependent upon the contract of insurance. See Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560.

Even though there are such distinctions, yet the decisions in promissory note cases announcing rules for determining the time interest becomes due are not applicable for other reasons. In cases where a promissory note has fixed the rate of interest at a certain per cent per annum without providing for periodic payments of interest installments, courts have generally held that interest became payable upon the maturity of the note. This is a rule of decision only and arises from the promise contained in the note. There is no rule of law, independent of contract, establishing such a doctrine. For example in Koehring v. Muemminghoff, 61 Mo. 403, a promissory note required payment of the principal five years after date "with interest from date at the rate of eight per cent per annum." Nothing was stated about periodic interest payments. We held: "No different time is fixed for the payment of the interest from that fixed for the payment of the principal secured to become due by the note. In such a case both principal and interest became due at the same time; *in fact the promise plainly is to pay the principal, with interest, five years after the date of the note.* [Our emphasis.] The words 'with interest at the rate of eight per cent per annum,' only fix the rate of interest to be calculated on the note, and have nothing to do with the time that it shall be paid." To the same effect see Tanner v. Dundee Land Investment Co., 12 Fed. 646; Re Payne, 171 Wis. 608, 177 N. W. 858, 10 A. L. R. 993; Ramsdell v. Hulett, 50 Kan. 440, 31 P. 1092; Canton Trust Co. v. Durrett, 320 Mo. 1208, 9 S. W. (2d) 925.

The cases hold the time for interest payments is fixed by the agreement of the parties and is not prescribed by any independent principle of law. So it follows the policy provision that "sum advanced shall bear interest at a rate of not to exceed six per cent per annum" merely fixes a limit on the rate of interest to be charged. It does not fix the time for the payment of interest at the so-called maturity of the policy loan, or at the time the policy lapses, or at any other time.

 The policy contemplates separate interest payments. While payments of the principal is permissive, payment of interest appears to be mandatory. The policy provides: "The sum advanced *shall* bear interest . . . and *may* be repaid . . ." Another statement in the policy indicates separate interest payments. "Failure to pay either the sum advanced or interest shall not avoid this policy . . ." Otherwise it appears to us the statement would have been worded "failure to pay the sum advanced *and* interest" rather than "*either* the sum advanced *or* interest." No mention being made in the policy as to the time the separate interest payments are to be made, it is obvious that such matter is left in the assignment agreement.

Besides the amount of the loan we find the rate of interest to be charged (not to exceed 6%), the time for interest payments, and the action to be taken if interest is not paid when due are matters absent from the policy provision and supplied by the assignment agreement. Thus the policy provision may not be considered as the complete loan agreement. It merely establishes the right of the insured to obtain a policy loan and sets out some general conditions pertaining to the loan. Specific details which would make the transaction complete are missing. Where a contract is incomplete it is held to be the understanding of the parties that terms usual and customary to such a transaction will be used to supply the deficiencies. Hind v. Oriental Products Co., Inc., 195 Cal. 655, 235 P. 438; Cassin v. Stillman-Delehanty-Ferris Co., 172 N. Y. S. 754, 185 App. Div. 63; Dallas Cotton Mills v. Huguley (Tex. Civ. App.), 230 S. W. 432; 25 C. J. S. "Customs and Usages" sec. 26. This should be specially so where a future supplemental agreement is contemplated.

We hold the policy provision together with the assignment agreement make up the complete loan contract. This was held in Cory v. Massachusetts Mutual Life Ins. Co., 54 R. I. 144, 170 A. 494 and Davis v. Acacia Mut. Life Ins. Co., 177 S. C. 321, 181 S. E. 12.

The usual provision which we find here that "this policy and the application herefor (a copy of which is attached hereto) constitute the entire contract between the parties" does not oppose our conclusion that the policy and the assignment agreement together make up the loan contract. That provision necessarily refers to the contract for the insurance then and there made and not to some future contract for a loan, the terms of which are left to a collateral agreement to be subsequently made. See Bernblum v. Travelers Ins. Co. of Hartford Conn., 340 Mo. 1217, 105 S. W. (2d) 941; Gibson v. Kansas City Life Ins. Co. (Mo. App.), 136 S. W. (2d) 131. The general rule stated in 44 C. J. S. "Insurance", sec. 337 (a) is: "The provisions of the policy and the loan agreement are construed together in determining the rights of the parties."

Plaintiffs' argument that the policy limits the interest chargeable to simple interest making the provision in the assignment agreement for compound interest invalid is based on those decisions following the statute that compound interest may be collected only upon an express agreement of the parties. Stoner v. Evans, 38 Mo. 461; St. Louis Gas-Light Co. v. City of St. Louis, 11 Mo. App. 55; Williams v. Carroll County, 167 Mo. 9, 66 S. W. 955. Those cases are not pertinent here in view of our holding that the policy and the assignment agreement together constitute the complete loan contract. The assignment agreement expressly authorizes the compounding of interest if not paid annually when due. There we have the express agreement required by the statute. Sec. 3232, R. S. 1939. In this the assignment agreement does not conflict with the policy. The

policy says the "sum advanced" shall bear interest at a rate not to exceed six per cent. Complying therewith the assignment agreement provides for interest at the rate of six per cent. While the policy indicates periodic payments of interest will be required, no provision is made as to what shall occur if interest is not paid. The assignment agreement provides for annual interest payments. It further provides that unpaid interest shall be added to and become part of the principal but only so far as the cash surrender value permits. In effect, because of the nature of its business the company advances or loans the amount of the unpaid interest installment. Instead of making a separate loan the amount of the unpaid interest is added to the original principal of the loan. Thereafter the new principal, the "sum advanced", bears six per cent interest.

 The assignment agreement is in nowise unconscionable or oppressive. It has become a general business practice to provide for the payment of interest at fixed periods during the continuance of a loan unless payment is required to be made in advance. See Am. Jur. "Interest", sec. 11. Requirements for interest to be paid monthly, or semi-annually or annually are usual business practices depending on the nature of the loan. That failure to pay an installment of interest when due shall accelerate the maturity of the loan is a common proviso.

In the early days the courts opposed and denied compound interest on the ground it was harsh and oppressive. Whitworth v. Davey, 279 Mo. 672, 216 S. W. 736. Since 1845 this State has sanctioned compound interest, compounded not oftener than once a year, when agreed to in writing. Sec. 3232, R. S. 1939. In Quackenbush v. Leonard, 9 Paige (N. Y.) 334 it was pointed out the opposition of courts to compound interest was based on public policy which sought to prevent an accumulation of compound interest in favor of negligent creditors who did not collect their interest when it became due which resulted in the end to be an injury rather than a benefit to the debtor. Here we have a contrary situation. It has been found to be to the benefit of a policy-holder not to cancel his policy for the non-payment of interest. Because of the nature of the transaction an insurance company may not resort to the usual practices for enforcing interest payments. In this situation if the insured does not pay the interest as it becomes due the company must advance it.

In adding the amounts of unpaid interest installments to principal the company followed the usual practice employed by insurance companies. The trial court found:

"It was at all times the universal, uniform, notorious and open custom, usage and practice of all life insurance companies to make all computations affecting insurance policies and insurance contracts, which involved interest or interest assumptions, on the basis that interest will be so paid annually and immediately reinvested and com-

pounded, and all actuarial computations relating to life insurance policies were at all said times based upon the compounding of interest annually.

"It was at all times that said Policy was in force the uniform custom and practice of the defendant to provide for addition of unpaid interest to principal and to provide for payment of interest thereon in all Assignment Agreements securing loans on policies containing provisions like, or similar to, those contained in the Policy sued on herein, and such custom and practice was openly and notoriously followed by life insurance companies, to require payment of interest annually on all policy loans."

"Assignment Agreements in substantially similar form providing that interest unpaid when due shall be added to principal, were used by defendant in the making of all policy loans since July, 1906, and several hundred thousand loans to policyholders were made on such forms upon policies containing loan provisions substantially identical with those in the Policy sued on herein; for more than 25 years, the validity of such agreements, as applied to such policies, was not questioned in a single case brought by any interested party."

It also appeared from the evidence that:

"The validity of the form of Assignment Agreement executed by the Insured when used to secure loans upon the form of Policy issued herein, and the validity of interest on unpaid interest which has been added to principal thereunder, as an asset of the defendant company, was passed upon and approved by the duly authorized examiners of the Insurance Department of the State of Missouri, both prior to the issuance of the Policy sued on herein and subsequent to the issuance thereof."

There are cases on insurance policies which hold that a requirement for compound interest in the assignment agreement is not enforcible where it was not expressly provided for in the policy. Murray v. Prudential Ins. Co., 144 Pa. Super. 178, 18 A. (2d) 820 so held on the ground the provision on loans in the policy purported to be the final contract and could not be changed by the assignment agreement. And see Senin v. Metropolitan Life Ins. Co., 153 Pa. Super. 658, 34 A. (2d) 910. McWilliams v. Northwestern Mutual Life Ins. Co., 285 Ky. 192, 147 S. W. (2d) 79 held that the requirement for compound interest in the assignment agreement was a modification of the policy provision for which there was no consideration and therefore invalid. Stauffer v. Northwestern Mutual Life Ins. Co., 184 Wash. 431, 51 P. (2d) 390 and Goodwin v. Northwestern Mutual Life Ins. Co., 196 Wash. 391, 83 P. (2d) 231 held the requirement for compound interest in the assignment agreement was invalid because it conflicted with the policy provision.

 Our conclusion that in this case the assignment agreement does not alter, modify or conflict with the policy, but supplements it and

completes the agreement pertaining to loans is in accord with the evident understanding of the insured. Any uncertainty or doubt about the policy provision has been settled by the conduct of the parties. In the course of insured's dealing with the company he executed eight assignment agreements in connection with this policy during the years 1923 to 1930. He made two annual interest payments. From 1931 through 1938 when the policy lapsed the company gave insured written notice each year that the interest had not been paid when due and that it had been added to the principal. Insured accepted without question the terms of the assignment agreement and followed them. "It is a well-established rule of law that the construction placed upon a contract by the parties as evidenced by acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning, but not where it is plain and unambiguous. 32 C. J. page 1150, sec. 260; page 1195, sec. 328; Lee v. Mo. State Life Ins. Co., 303 Mo. 492, 261 S. W. 83; State v. Christopher, 318 Mo. 225, 2 S. W. (2d) ·621; Haseltine v. Farmers' Mutual Fire Ins. Co. (Mo.), 263 S. W. 810." Scotten v. Metropolitan Life Insurance Co., 336 Mo. 724, 81 S. W. (2d) 313. On the same question we are considering a similar course of conduct by insured was held to be binding upon the beneficiary. Penn. Mut. Life. Ins. Co. of Philadelphia v. Marshall, 49 Ga. App. 287, 175 S. E. 412. And see Glover v. Kansas City Life Ins. Co., 202 Mo. App. 404, 218 S. W 905. If language is susceptible of interpretation in opposite ways it is ambiguous. J. E. Blank, Inc., v. Lennox Land Co., 351 Mo. 932, 174 S. W. (2d) 862. And where an ambiguity in an insurance policy has been removed by the construction of the parties there is no room for the application of the rule a policy must be construed strictly against the insurer. Haseltine v. Farmers' Fire Ins. Co. (Mo.), 263 S. W. 810.

The judgment of the Kansas City Court of Appeals is quashed and the judgment of the trial court is affirmed. All concur.