Luz Raquel Arvelo, etc., Plaintiff and Appellee, v. Fran-cisco Rodríguez Cuevas, Defendant and Appellant; Hartford Accident and Indemnity, Co., Intervener and Appellant.

No. 9745. Argued May 5, 1949.—Decided May 17, 1949.

*José López Baralt* and *Rafael Rodríguez Lebrón* for intervener appellant. *Luis Mercader* for plaintiff-appellee. *Ramón Ferrer Delgado* for defendant-appellant. *Emilio de Aldrey,* as *amicus curiae.*

Mr. Justice Negrón Fernández delivered the opinion of the Court.

The intervener appellant is seeking reconsideration of the judgment rendered by this Court on July 16, 1948 [1] affirming a judgment of the District Court of Arecibo which sustained a civil action for damages. The suit arose out of an accident wherein the plaintiff minor, Luz Raquel Arvelo, sustained injuries upon being run over on August 17, 1946 by a public car belonging to defendant Francisco Rodríguez Cuevas, which was insured pursuant to Act No. 279 of April 5, 1946 with the Hartford Accident & Indemnity Company. Due to several changes which have taken place in this Court subsequent to that date a second hearing of the motion of reconsideration was held on the 5th of this month, wherein the defendant appellant as well as the intervener appellant and the *amicus curiae*, argued their respective views.

From our opinion of July 16th we copy the statement of facts as it appears on p. 151.

"The evidence showed that the vehicle in question—a beachwagon of the type known as '*cariocas*'—belonged to Francisco Rodríguez Vega, father of the defendant Francisco Rodríguez Cuevas and was insured in the name of the former. (The intervener admits that the fact that the vehicle was not being operated by its owner at the time of the accident does not excuse him from liability.) The evidence also showed that on the afternoon of the above-mentioned day, Francisco Rodríguez Cuevas, with the consent and acquiescense of his father, went with several guests to the Calero suburb of Aguadilla, where he was married, and that upon returning to Camuy at about 7 or 7:30 P. M. the accident occurred. Although. several witnesses testified that when the accident occurred Rodríguez Cuevas transported besides his guests, several passengers for pay, the lower court did not believe those witnesses and concluded that only the guests of the defendant were traveling in the vehicle. As to whether or not the vehicle traveled on the route assigned to it by the Public Service Commission, the evidence showed that at that time there were no fixed routes and that the public cars could travel freely in any direction. Therefore the only question

[1] See *Arvelo* v. *Rodríguez*, *ante*, p. 149.

in controversy is whether the insurance policy issued by the intervener covered the damages caused to a third person when an insured vehicle was not transporting passengers for pay at the time of the accident."

The case involves, as we have seen, a vehicle insured under § 10 (a) of the aforementioned Act No. 279 of April 5, 1946.[2] Such vehicle was one of those contemplated by § 2 (h) of the above-mentioned Act as a "public-service automobile" and defined therein as "any motor vehicle used for the transportation of passengers. . . for pay." In addition to the fees specified in § 9 of said Act,[3] an annual sum of $29 is paid as premium for an insurance policy "covering accidents caused

---

[2] Section 10(a) provides: "Every motor vehicle with a capacity of not more than ten (10) passengers, *used as a public carrier in the transportation of passengers for pay*, including those considered to be the instrument of work of the owner, shall pay between July 1st and July 18th of each year, in addition to the fees hereinbefore prescribed, the sum of twenty-nine dollars ($29) in special Internal-Revenue Stamps with the words 'Auto Público Asegurado' printed on them. Said annual sum of twenty-nine dollars ($29), or such part thereof as corresponds to a fraction of the year, shall be deposited in a special fund in the Treasury of Puerto Rico to be held at the disposal of the Commissioner, and shall be used by the latter to pay the premium on an insurance policy *covering accidents caused by said vehicle to passengers traveling therein, to the driver and to third persons, or any other additional risk which the insurance company may be willing to underwrite*, and for that purpose the Commissioner shall pay for each insured vehicle said sum of twenty-nine (29) dollars to the State Insurance Fund or to the insurer who, at a public call for bids issued for that purpose by the Supplies Commission of the Insular Government, *shall offer the best conditions* and receive the award, subject to the rules that the said Supplies Commission may establish for the purpose. In case no bid is received from any insurer, or if the award is not made to any bidder because the *terms offered are considered unacceptable*, the sum paid by the owners of public automobiles for such insurance policy shall be reserved in the Insular Treasury in a special fund until such time as an insurer may be found who is willing to provide the desired policy, or shall be placed at the disposal of the State Insurance Fund; *Provided*, That the Supplies Commission is empowered to award, separately, the insurance covering the automobiles of public service and the insurance on automobiles considered to be the instrument of work of their owners." (Italics ours.)

[3] Pursuant to § 9 of said Act the public service automobiles of seven passengers or less shall pay an annual fee of $50 and those of eight to ten passengers, one of $60.

by said vehicle to passengers traveling therein, to the driver and to third persons, *or any other additional risk* which the insurance company may be willing to underwrite," in accordance with § 10 (*a*) already cited of the same Act. (Italics ours.)

The policy under which the vehicle that caused the damages to the plaintiff was insured for the year 1946–47 provides the following, in its additional conditions applicable only to the insurance of public cars not deemed instrument of work of their owners, and known as "P" cars:

"6. This policy shall apply only when the vehicles described herein are used as public conveyance for transportation of passengers for pay in the public highways or streets of this Island and in accordance with the regulations of the Public Service Commission of Puerto Rico, including regulations as to routes."

Relying on this clause the insurance company argues that the policy does not cover the damages caused to the plaintiff by the vehicle of the defendant Rodríguez Cuevas, inasmuch as the latter was not using it as a public carrier in the transportation of passengers for pay at the time of the accident.

■ We do not deem it necessary to decide whether, as the defendant contends, this is a compulsory insurance or whether, as maintained by the intervener, it is one *sui generis*. Whatever the name may be, it is not the determining factor as to the insurance company's liability in this case. The question to decide is whether the coverage required by the statute for every motor vehicle used in the transportation of passengers for pay, as a public carrier, whatever the nature of the insurance, is a *total* coverage, that is, whether it covers every risk no matter how, when, or where the vehicle is used, or whether it is *limited* to the risks inherent or incidental to its operation and use as a public carrier, irrespective of the other risks that the insurance company is willing to assume.

■■ The insurance provided by Act No. 279 for every motor vehicle used in the transportation of passengers for

pay, as a public carrier, covers "the accidents caused by *said vehicle* to passengers traveling therein, to the driver, and to third persons," (Italics ours) and also "any other additional risk that the insurance company may be willing to under-write." Although the statute does not expressly provide that the policy shall cover accidents caused *while* the vehicle is engaged in the transportation of passengers for pay, as a public carrier, such provision is not necessary in order to reach the conclusion that the policy does not cover accidents caused while a "public service automobile" (§ 2(*h*) of the Act) is used for private purposes, other than the public service in which it should engage under the license obtained therefor, unless the insurance company is willing to assume such additional risks in the insurance contract.[4]

The theory that the statute provides total coverage of risks for the insured vehicle is untenable. The words "or any other additional risk that the insurance company may be willing to underwrite," used in the statute immediately after it is stated that the amount of $29 shall be used to pay the premium on an insurance policy "covering accidents caused by said vehicle to passengers traveling therein, to the driver, and to third persons" clearly indicate that other risks, besides those inherent or incidental to the operation and use of the vehicle as a public carrier, may be covered by the policy

---

[4] Cf. *Sordelett* v. *Mercer et al.* (Va., 1946), 185 Va. 823, 40 S. E. 2d 289; *American Casualty Co. of Reading, Pa.* v. *Morris et al.* (W. Va., 1943), 51 F. Supp. 889, and annotation in 141 A.L.R. 628.

[5] This clause, by the very terms of the conditions of which it is a part, does not apply to vehicles which are instrument of work of their owners.

Clause 5(*b*) of the general conditions of the policy applicable to vehicles which are instrument of work of their owners as well as to those which are not, upon referring to Item One of the Declarations of the policy concerning the insured vehicles, defines the purposes of the *commercial* use of said vehicles as follows:

"(*b*) The term 'commercial' is defined as use principally in the business occupation of the insured as stated in Item 1, including occasional use for personal purposes, pleasure, family purposes and other business purposes."

if the insurance company underwrites them. These words limit those immediately preceding, namely, those which fix the scope of the coverage to be required in the policy, by saying "covering the accidents caused by said vehicle [public carrier] to passengers traveling therein, to the driver, and to third persons."

■■ Clause 6 of the additional conditions of the policy applicable only to the insurance of public automobiles *other than those* deemed instrument of work of their owners,[5] is not in conflict with the statutory provisions. This clause was inserted in the policy to indicate expressly that the insurance company does not assume the additional risks excluded therein, which under § 10 (*a*), already cited, it could have assumed in the insurance contract. It likewise serves to show the scope given by the [General Administration] Supplies Commission to this statute with respect to the minimum coverage to be *required* in the policy which was to be obtained by means of bids. We can not overlook the fact that the [General Administration] Supplies Commission, a governmental agency in charge of implementing the Act in obtaining the insurance policy, accepted said clause fully conscious of the legislative mandate that it should obtain at the public bid "the best conditions." We see no reason or justification whatsoever to set aside the administrative action of this governmental agency whereby it fixed the scope of the statutory requirements as to the minimum coverage of said policy. In view of the aim pursued by the legislation involved herein, the administrative interpretation given to the statute by the government itself—embodied in the above-mentioned clause 6—should have a persuasive value.[6]

We are not dealing in this case with a *violation*, on the part of the assured of one of the conditions of the policy, within the coverage offered by it. We are dealing with a *limitation* of liability under the policy itself, not inconsistent

with the terms of the statute and by which the insurance company did not assume in the insurance contract, as to vehicles which are not instruments of work of their owners, other hazards in addition to those which the Legislature intended to cover.[7]

Accordingly, the case of *Rondón* v. *Aetna Casualty & Surety Co.*, 56 P.R.R. 418 is not applicable. And although we are not basing this opinion on *Hernández* v. *Rosario*, 66 P.R.R. 281, inasmuch as the statute in force at that time—Act No. 33 of April 14, 1941—did not contain the words limiting the liability "or any other additional risk which the insurance company may be willing to underwrite" contained in the Act involved herein and which we have already analyzed, in this case as well as in that case, we hold that the clause in the policy challenged as violating the statute is in harmony with it.

For the reasons stated, our opinion and judgment of July 16, 1948 shall be set aside and another rendered instead reversing the judgment of the lower court as to the intervener and dismissing the complaint as to the latter, and affirming it as to the defendant Francisco Rodríguez Cuevas.

---

[6] Cf. *State ex rel. Northwestern Mut. Life Ins. Co.* v. *Bland et al.*, 354 Mo. 391, 189 S. W. 2d 542, 161 A.L.R. 423 and 119 A.L.R. 877.

[7] Although the policy involved herein insures vehicles which are instruments of work of their owners as well as those which are not, § 10 (*a*) of the Act authorizes the Supplies Commission to award separately the insurance of automobiles of public service (§ 2 (*h*)) and the insurance of automobiles deemed to be the instruments of work of their owners (§ 2 (*w*)).