Luz Raquel Arvelo, conocida por Luz Raquel Soto, asistida de su madre natural Josefina Arvelo, demandante y apelada, *v.* Francisco Rodríguez Cuevas, demandado y apelante; Hartford Accident & Indemnity Co., interventora y apelante.

Núm. 9745.—*Sometido:* Mayo 5, 1949. *Resuelto:* Mayo 17, 1949.

*José López Baralt* y *Rafael Rodríguez Lebrón,* abogados de la interventora apelante; *Luis ·Mercader,* abogado de la demandante apelada; *Ramón Ferrer Delgado,* abogado del demandado apelante; *Emilio de Aldrey,* como *amicus curiae.*

En Reconsideración

El Juez Asociado Señor Negrón Fernández emitió la opinión del tribunal.

De la sentencia de este Tribunal de 16 de julio de 1948([1]) que confirmó la dictada por la Corte de Distrito de Arecibo declarando con lugar acción civil de daños y perjuicios, solicitó reconsideración la interventora apelante. Dicha acción fué iniciada como resultado de un accidente en que la menor demandante, Luz Raquel Arvelo, sufrió lesiones al ser arrollada el 17 de agosto de 1946 por un automóvil de servicio público propiedad del demandado Francisco Rodríguez Cuevas, asegurado bajo la Ley 279 de 5 de abril de 1946 ((1) pág. 599) con la Hartford Accident & Indemnity Company. Por cambios habidos en la integración de este Tribunal con posterioridad a esa fecha, se celebró una segunda vista de la moción de reconsideración, el día 5 de este mes, en la que tanto el demandado apelante como la interventora apelante, y el *amicus curiae,* argumentaron sobre sus respectivos puntos de vista.

De nuestra opinión de 16 de julio en este recurso transcribimos la relación que de los hechos correctamente allí se hace, a las páginas 161. y 162:

([1]) Véase *Arvelo* v. *Rodríguez,* ante, pág. 159.

"La prueba demostró que el vehículo en cuestión—una guagüita de las conocidas por 'cariocas'—pertenecía a Francisco Rodríguez Vega, padre del demandado Francisco Rodríguez Cuevas, y estaba asegurado a nombre de aquél. (La interventora admite que el hecho de no estar siendo el vehículo conducido por su dueño al momento del accidente no la exime de responsabilidad.) Igualmente reveló la prueba que en la tarde del indicado día Francisco Rodríguez Cuevas, con la anuencia y aquiescencia de su padre, se trasladó con un número de invitados al Barrio Calero, de Aguadilla, donde sus bodas fueron celebradas y que al regresar de allí a Camuy y allá para las 7 ó 7:30 de la noche tuvo lugar el accidente. Aunque varios testigos declararon que al ocurrir el mismo, en adición a sus invitados, Rodríguez Cuevas transportaba a varios pasajeros mediante paga, la corte inferior no dió crédito a éstos y concluyó que en el vehículo solamente venían los invitados del demandado. En cuanto a si el automóvil viajaba o no dentro de la ruta fijádale por la Comisión de Servicio Público, la prueba demostró que para aquel entonces no existían rutas fijas y que los vehículos públicos podían transitar libremente en cualesquiera direcciones. Así pues, la única cuestión en controversia es si no estando el vehículo asegurado transportando pasajeros mediante paga en el momento en que ocurrió el accidente, la póliza de seguros expedida por la interventora cubre los daños y perjuicios causados a un tercero."

Se trata, como hemos visto, de un vehículo asegurado bajo las disposiciones del artículo 10(a) de la citada Ley 279 de 5 de abril de 1946.(²) Dicho vehículo era uno de los compren-

---

(²)Dicho artículo 10(a) dispone: "Todo vehículo de motor con capacidad no mayor de diez (10) pasajeros, *dedicados a la transportación de pasajeros mediante paga como porteador público*, incluyendo los que se consideran como instrumento de trabajo, pagará en adición a los derechos anteriormente prescritos, en sellos especiales de rentas internas en los cuales aparecerá impresa la frase 'Auto Público Asegurado', la suma de (veintinueve dólares) $29, pagaderos en el término comprendido entre el 1ro. y el 15 de julio de cada año. Dicha suma anual de $29 o la parte de ella correspondiente a la fracción del año ingresará en un fondo especial en la Tesorería de Puerto Rico a disposición del Comisionado y será utilizado por éste para pagar la prima de una póliza de seguro *que cubra los accidentes causados por dicho vehículo a los pasajeros que viajan en el mismo, al chófer, a terceras personas o cualquier otro riesgo adicional que la Compañía Aseguradora esté dispuesta a asumir*, y a tal fin el Comisionado satisfará dicha suma de veinte y' nueve (29) dólares por cada asegurado al Fondo del Seguro del Estado o al asegurador que en subasta pública convocada al efecto por la Comisión de Suministros del

didos en el artículo 2(*h*) de la ley de referencia como "automóvil de servicio público", que allí se define como "todo vehículo de motor que se dedique a la conducción de pasajeros . . . mediante paga", y por el cual, en adición a los derechos especificados en el artículo 9 de dicha ley,([3]) se paga la suma anual de $29 en concepto de prima para una póliza de seguro "que cubra los accidentes causados por dicho vehículo a los pasajeros que viajan en el mismo, al chófer, a terceras personas *o cualquier otro riesgo adicional* que la Compañía Aseguradora esté dispuesta a asumir", conforme se dispone en el artículo 10(*a*), ya citado, de la misma ley. (Bastardillas nuestras.)

La póliza bajo la cual se aseguró para el año 1946–47 el vehículo que ocasionó los daños a la demandante provee, en sus condiciones adicionales aplicables únicamente al seguro de vehículos públicos que no sean instrumentos de trabajo de sus dueños, y conocidos por carros "P", lo siguiente:

"6.—Esta póliza responderá solamente mientras los vehículos aquí descritos sean utilizados para el transporte de pasajeros, mediante paga, en las carreteras o calles públicas de esta Isla y de conformidad con los Reglamentos de la Comisión de Servicio Público de Puerto Rico, incluyendo los Reglamentos sobre rutas."

Gobierno Insular, *ofrezca las mejores condiciones* y reciba la buena pro en dicha subasta, conforme a las reglas que a tales efectos fijare la citada Comisión de Suministros. En caso de que no concurriere a la subasta ningún asegurador o no se adjudicare la buena pro a ninguno de los que concurran *por no considerarse aceptables las condiciones ofrecidas,* la suma pagada por los dueños de automóviles públicos con destino a esta póliza de seguro se reservará en la Tesorería Insular en un fondo especial hasta tanto se consiga un asegurador dispuesto a establecer el seguro interesado o se pondrá a la disposición del Fondo del Seguro del Estado; *Disponiéndose,* que la Comisión de Suministros queda facultada para conceder la buena pro por separado el seguro de los automóviles de servicio público y el seguro de los automóviles considerados como instrumento de trabajo de sus dueños." (Bastardillas nuestras.)

([3])De acuerdo con el artículo 9 de la citada ley, los automóviles de servicio público de siete pasajeros o menos pagarán $50 y los de 8 a 10 pasajeros $60 de derechos al año.

Es a tenor con dicha cláusula que sostiene la aseguradora que la póliza no cubre los daños ocasionados a la demandante por el vehículo del demandado Rodríguez Cuevas, toda vez que éste, al ocurrir el accidente, no lo dedicaba al servicio público de conducción de pasajeros mediante paga.

■ No creemos necesario resolver si, como sostiene el demandado, se trata aquí de un seguro compulsorio o si, como sostiene la interventora, se trata de uno *sui generis*. El calificativo que se dé al mismo no es el factor determinante de la responsabilidad de la aseguradora en este caso. La cuestión a determinar es si la cubierta del seguro que el estatuto dispone para todo vehículo de motor dedicado a la transportación de pasajeros mediante paga, como porteador público, cualquiera que sea el carácter del seguro, es una cubierta *total,* o sea contra todo riesgo no importa cómo, cuándo y dónde se use el vehículo, o si es una *limitada* a los riesgos propios de, o incidentales a su operación y explotación como porteador público, independientemente de los demás riesgos que la Compañía Aseguradora esté dispuesta a asumir en la póliza.

■■ El seguro dispuesto por la citada Ley 279 para todo vehículo dedicado a la transportación de pasajeros mediante paga, como porteador público, lo fué para cubrir "los accidentes causados por *dicho vehículo* a los pasajeros que viajan en el mismo, al chófer, a terceras personas", (bastardillas nuestras) y además "cualquier otro riesgo adicional que la Compañía Aseguradora esté dispuesta a asumir". Si bien el estatuto no dice expresamente que dicho seguro ha de cubrir tales accidentes *mientras* el vehículo se dedica a la transportación de pasajeros mediante paga, como porteador público, no es necesario ese lenguaje para llegar a la conclusión de que tal seguro no cubre accidentes ocurridos cuando un "automóvil de servicio público" (artículo 2(*h*) de la ley) se dedica a usos particulares, ajenos al servicio público que está llamado a prestar en virtud de la licencia obtenida para

ello, a menos que la Compañía Aseguradora esté dispuesta a asumir tales riesgos adicionales en el contrato de seguro.([4])

La contención de que el estatuto dispone una cubierta total de riesgos para el vehículo asegurado, no puede prevalecer. La frase "o cualquier otro riesgo adicional que la. Compañía Aseguradora esté dispuesta a asumir", usada en el estatuto seguidamente después de expresarse que la suma anual de $29 se utilizará para pagar la prima de una póliza de seguro "que cubra los accidentes causados por dicho vehículo a los pasajeros que viajan en el mismo, al chófer [y] a terceras personas" es claramente indicativa de que otros riesgos, además de los propios de o incidentales a la operación y explotación del vehículo como porteador público, pueden estar cubiertos por la póliza, si la Compañía Aseguradora los asume. Dicha frase es una de limitación a la que inmediatamente le precede, o sea, a la que fija el alcance de la cubierta a exigirse en la póliza, cuando dice "que cubra los accidentes causados por dicho vehículo [porteador público] a los pasajeros que viajan en el mismo, al chófer [y] a terceras personas."

■ ■ La cláusula 6 de las condiciones adicionales de la póliza, aplicables únicamente al seguro de vehículos públicos *que no sean* instrumentos de trabajo de sus dueños,([5]) no está en conflicto con las disposiciones de la ley. Existe dicha cláusula en la póliza como indicación expresa de la asegura-

---

([4])*Cf. Sordelett* v. *Mercer et al.* (Va., 1946), 185 Va. 823, 40 S.E.2d 289; *American Casualty Co. of Reading, Pa.* v. *Morris et al.* (W. Va., 1943), 51 F. Supp. 889, y monografía en 141 A.L.R. 628.

([5])La indicada cláusula, por los propios términos de las condiciones de que forma parte, no se aplica a los vehículos que son instrumentos de trabajo de sus dueños.

La cláusula 5(*b*) de las condiciones generales de la póliza aplicables tanto a los vehículos que son como los que no son instrumentos de trabajo de sus dueños, al referirse al primer párrafo (*item*) de las declaraciones (*declarations*) de la póliza que se refiere a los vehículos asegurados, define los propósitos del uso *comercial* de dichos vehículos en la siguiente forma: "(*b*) El término 'comercial' se define como uso principalmente en la ocupación del negocio del asegurado según se indica en el párrafo (*item*) 1, incluyendo uso ocasional para fines personales, de diversión, de familia y otros fines del negocio."

dora de que no asume los riesgos adicionales allí excluídos, los cuales, bajo el artículo 10(*a*) ya mencionado, hubiera podido asumir en el contrato de seguro. Y existe también como indicación del alcance que la Comisión [Administración General] de Suministros dió al estatuto en cuanto a la cubierta mínima *a exigirse* en la póliza que habría de obtenerse mediante subasta pública. No podemos perder de vista que la Comisión [Administración General] de Suministros, agencia gubernamental encargada de la instrumentación de la ley para la obtención de la póliza de seguro, aceptó dicha cláusula, consciente del mandato legislativo de que en la subasta obtuviera "las mejores condiciones". No vemos razón o justificación alguna para dejar sin efecto la acción administrativa de esa agencia del Gobierno al determinar el alcance de los requisitos estatutarios sobre la cubierta mínima de dicho seguro. Dada la finalidad de la legislación envuelta en este caso, la interpretación administrativa que al estatuto dió el propio gobierno—plasmada en la cláusula 6 de referencia—debe tener valor persuasivo.[6]

En este caso no estamos ante una *violación* por el asegurado de una de las condiciones de la póliza, dentro de la cubierta que ésta ofrece. Estamos ante una *limitación* de responsabilidad bajo la propia póliza, no inconsistente con los términos del estatuto, y según la cual la aseguradora no asumió en el contrato de seguro, en cuanto a los vehículos que no son instrumentos de trabajo de sus dueños, riesgos adicionales a los que el legislador determinó cubrir.[7]

Por tanto, el caso de *Rondón* v. *Aetna Casualty & Surety Co.*, 56 D.P.R. 439, no es de aplicación. Y si bien no estamos

---

[6] *Cf. State ex rel. Northwestern Mut. Life Ins. Co.* v. *Bland et al.*, 354 Mo. 391, 189 S.W.2d 542, 161 A.L.R. 423; y 119 A.L.R. 877.

[7] Aunque la póliza que nos ocupa asegura tanto los vehículos que son como los que no son instrumentos de trabajo de sus dueños, el propio artículo 10(*a*) de la ley faculta a la Comisión [Administración General] de Suministros a conceder, por separado, en la subasta, la buena pro del seguro de los automóviles de servicio público (art. 2(*h*)) y el de los automóviles considerados como instrumentos de trabajo de sus dueños (art. 2(*w*)).

predicando esta opinión en el caso de *Hernández* v. *Rosario,* 66 D.P.R. 294, toda vez que el estatuto que regía para aquel caso—Ley núm. 33 de 14 de abril de 1941 ((1) pág. 549)— no contenía la frase de limitación de responsabilidad "o cualquier otro riesgo adicional que la Compañía Aseguradora esté dispuesta a asumir" que contiene la ley en el caso de autos y que ya antes hemos analizado, en este caso, como en aquél, resolvemos que la cláusula en la póliza, que se impugna como contraviniendo el estatuto, está en armonía con el mismo.

*Por los fundamentos expuestos, se dejarán sin efecto nuestra opinión y sentencia de 16 de julio de 1948 en este recurso y en su lugar se dictará otra revocando la dictada por la corte inferior en cuanto a la interventora y declarando sin lugar la demanda en cuanto a ella, y confirmándola en cuanto al demandado Francisco Rodríguez Cuevas.*